KENTUCKY DISTILLERIES & WAREHOUSE CO. et al. v. WARWICK CO.

(Circuit Court of Appeals, Sixth Circuit. June 4, 1901.)

No. 890.

1. CONTRACTS FOR SALE OF PROPERTY—CONSTRUCTION—TIME OF ESSENCE.
Time may be of the essence of a contract for the sale of property, even without an express provision to that effect, where such is the evident intention of the parties, and such intention may be inferred from the nature of the property itself, and the situation and relation of the parties thereto.

2. SAME—RIGHT TO SPECIFIC PERFORMANCE.
A contract for the sale of distillery property and a large quantity of whisky, the latter constituting two-thirds in value of the entire property sold, provided that a conveyance of the realty should be placed in the hands of a trust company, to be delivered to the purchaser on payment "of the consideration herein set forth for properties to be delivered, provided the said consideration is paid to said trust company on or before March 10, 1899." Held, that in view of the nature of the greater part of the property, which was a marketable commodity, and at the time fluctuating in value, such provision must be construed as making time of the essence of the contract, and the seller could not be compelled to specifically perform where the purchase money was not paid in to the trust company until April 14th, at which time the whisky had increased largely in market value.

3. SPECIFIC PERFORMANCE—SUIT BY PURCHASER—NECESSITY OF TENDERING PERFORMANCE.
A purchaser of real estate, who is required by the contract to deposit the price with a third party by a day certain,—time being of the essence of the contract,—is bound to pay in or tender the money within the time stated, to entitle him to enforce specific performance, notwithstanding the failure of the vendor to furnish an abstract of title within the time required by the contract.

4. SAME—WAIVER OF SELLER'S DEFAULT.
A contract for sale of real estate made on February 20th required the vendor to furnish an abstract within five days, and the purchaser to

pay the purchase price by March 10th; time being of the essence of the contract. An abstract was furnished March 1st, which was subsequently approved by the purchaser, without any objection made thereto, so far as the vendor was advised. *Held*, that the failure of the vendor to furnish the abstract within the time was waived by its subsequent acceptance without objection, and could not be urged by the purchaser, in a suit by him to enforce specific performance, as a justification of his own failure to pay or tender the purchase money until more than a month after the time limited therefor by the contract.

Appeal from the Circuit Court of the United States for the District of Kentucky.

A. P. Humphrey and Charles H. Stoll, for appellants.
Helm Bruce, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge.    This is an appeal from a decree dismissing the bill brought by complainants, the Kentucky Distilleries & Warehouse Company and Charles H. Stoll, against the Warwick Company, for specific performance of a contract executed on the 20th of February, 1899. The contract provided for the purchase of a certain distillery, with its appurtenances and fixtures, and the real estate in connection therewith; also about 4,500 barrels of whisky, property of the Warwick Company. Paragraphs of the contract pertinent to the present case are

"(3) First party (Warwick Company) will within five (5) days deliver to second party, or his agent, a full and complete merchantable abstract of title to said real estate."

"(7) Second party (Stoll) will cause to be prepared and delivered to first party for due execution all the papers necessary and proper to be executed by first party in order to duly effectuate the contract herein made, all of which, if in proper form, shall be duly executed and placed in trust not later than March 1st with the Columbia Finance and Trust Company, to be delivered to second party upon the payment by second party to said trust company of the consideration herein set forth for properties to be delivered, provided the said consideration is paid to said trust company on or before March 10, 1899."

"(9) The price fixed below to be paid for the whisky is based on the proof gallons found by the original gauge of the whisky, but first party guaranties that the 'outs' found by the four years regauge are not more than one (1) gallon per barrel in excess of the allowance fixed by the United States government."

"(11) For the aforesaid property second party will pay to the first party: (a) For the distillery premises, brands, business, good will, etc., twenty-five thousand dollars ($25,000). (b) For the whisky, twenty-seven and one-half (27½) cents per proof gallon, original gauge. (c) All of which will be paid in cash, as above provided, on or before March 10, 1899."

The complainant Stoll has introduced proof tending to show that he was acting for the Kentucky Distilleries & Warehouse Company, although the contract was in his name. Mr. Stoll did not make out the papers proper and necessary to be executed by the Warwick Company, as provided in paragraph 7 of the contract, until March 28, 1899, and did not pay in the purchase money until April 14, 1899. The reasons assigned for this failure of the complainants to comply with the agreement will be more fully considered hereafter.

The proposition which it is necessary first to determine in dis-

posing of this case concerns the construction of the contract. It is claimed on behalf of the Warwick Company that time was of the essence thereof, and that the failure of the complainants to tender the purchase-money on or before March 10, 1899, as stipulated, is an effectual bar to the relief sought. It is insisted that, by the express language of the agreement, time is made of the essence of the contract, and that this is particularly so when it is construed, having in view the subject-matter thereof, and the situation and relation of the parties thereto at the time. There can be no question that parties may make time of the essence of a contract in the sale of property. They may do this by express stipulation, or the intent so to do may be gathered from the nature of the property itself. This principle is too well established to need extended citation of authorities to support it. Waterman v. Banks, 144 U. S. 403, 12 Sup. Ct. 646, 36 L. Ed. 479. The intention of the parties is the controlling factor in the situation, and must govern the construction. Pom. Cont. § 382; Cheney v. Libby, 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 818. In examining the terms of this contract, we find that it is expressly agreed that the title papers shall be executed and placed in trust not later than March 1, 1899. The contract then provides that these papers shall be "delivered to second party upon the payment by second party to said trustee of the consideration herein set forth for the properties to be delivered, provided said consideration is paid to said trust company on or before March 10, 1899"; and in paragraph 9 of the contract, in which the method of payment for the whisky is fixed and determined, it is said, "all of which will be paid in cash as above provided on or before March 10, 1899." The parties had not contented themselves with an agreement upon the one hand to convey certain property, and upon the other to pay a consideration therefor; and it was expressly stipulated that the purchaser should not receive the deeds, but the same should be deposited with the trust company, and not then to be delivered to the second party until compliance with the proviso that the consideration should be paid to the trustee, who held the deeds in escrow, on or before the 10th day of March, 1899. And, again, payment for the whisky, estimated to be worth from $50,000 to $60,000 more than twice the fixed value of the distillery property, was to be made in cash, "as above provided, on or before March 10, 1899." We do not see that any express stipulation that time should be of the essence of the contract could make it any more evident that such was the purpose of the parties than do the terms of the contract which we have just quoted. There is manifestly a purpose on the part of the seller to retain the title with the deeds in escrow until the purchase money is paid. By its terms the contract makes payment a condition precedent to the right of the second party to receive the title papers and become vested with the ownership of the property which is the subject of sale. The parties undoubtedly had a right to make such payment a condition precedent. It seems to us that they have done so by apt and sufficient language. This construction of the contract is greatly strengthened when we consider the subject-matter of the sale. The testimony shows that the 4,500 barrels of whisky constituted by far the largest part of the considera-

tion of the contract. The record discloses that about the time of this agreement an effort was being made to buy up and consolidate many of the distilleries in Kentucky. There was then pending a bill in congress, styled the "Outage Bill," which was supposed to be very materially to the advantage of the owners of whisky in paying taxes thereon. As a matter of fact, this bill is said to have passed on March 3d, following this agreement. Whisky did advance, very rapidly. It is undisputed that property of this character is subject to fluctuations in value. It would be unprofitable to an owner to tie it up on a rising market, awaiting the pleasure of a purchaser. Taking into consideration the character of the property and the state of the market, no less than the stipulations of the contract, time was clearly of the essence of this agreement.

It is strenuously urged, however, that the failure on the part of the Warwick Company to furnish an abstract of title within five days absolved the complainants from the necessity of preparing the papers and making a tender on March 10, 1899; that this agreement to make an abstract in five days was the first thing to be done; and that, as a matter of fact, the abstract was not completed until March 19th or 20th following. Assuming that it was the duty of the Warwick Company to furnish the abstract of title within five days from the execution of the contract, would this failure so to do excuse the compliance of complainants with the agreement on their part to pay in the purchase money to the trustee on or before March 10th, as stipulated in the agreement? The question would be quite different if the complainants, because of the failure to furnish the abstract, had declined to pay in the purchase money, and were seeking to be absolved from the contract. The precise question is whether complainants, who seek specific performance, are not themselves bound to tender performance on their part. As we understand Kelsey v. Crowther, 162 U. S. 404, 16 Sup. Ct. 808, 40 L. Ed. 1017, the ruling of the supreme court of the United States is that notwithstanding failure to furnish an abstract when the purchase money was to be paid by a day certain, and time was of the essence of the contract, the purchaser seeking specific performance would be obliged himself to tender performance on his part. In that case the purchaser was to have 30 days in which to examine the abstract, which the seller agreed to furnish at once, together with other necessary papers. The abstract was not furnished, and, the next day after the expiration of the 30 days, tender was made to the seller of the purchase money, and demand made for the conveyance of the property. Mr. Justice Shiras, delivering the opinion of the court, uses the following pertinent language:

"The action was in the nature of a bill for specific performance of a contract for the sale and purchase of a tract of land. If the contract is construed as making it the duty of Crowther to tender the abstract, yet his failure to do so did not dispense with performance or the offer to perform on the part of the complainants. His failure to furnish the abstract might have justified complainants in declaring themselves off from the contract, and might have formed a successful defense to an action for damages brought by Crowther. But, if they wished to specifically enforce the contract, it was necessary for the complainants themselves to tender perform-

ance. To entitle themselves to a decree for specific performance of a contract to sell land, it has always been held necessary that the purchasers should tender the purchase money. This is the rule in the ordinary case of a mutual contract for the sale and purchase of land. And the rule is still more stringently applied in the case of an optional sale, like the present one, where time is of the essence of the contract, and where Crowther could not have enforced specific performance. In such a case, if the vendee wish to .compel the other to fulfill the contract, he must make his part of the agreement precedent, and cannot proceed against the other without actual performance of the agreement on his part, or a tender and refusal. President, etc., v. Hagner, 1 Pet. 455, 464, 7 L. Ed. 219; Marble Co. v. Ripley, 10 Wall. 339, 359, 19 L. Ed. 955."

Upon the authority of this case, it is apparent that, if complainants ·would lay the foundation of an action for specific performance, they must have tendered the purchase money on or before March 10, 1899, as provided by the terms of the agreement. Failing so to do, .the complainants have not laid the foundation for such a decree. In reaching this conclusion, we have not overlooked Cheney v. Libby, 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 818, wherein the supreme court said:

"Even where time is made' material by express stipulation, the failure of one of the parties to perform a condition within the particular time limited will not in every case defeat his right to a specific performance, if the condition be subsequently performed, without unreasonable delay, and no circumstances have intervened that would render it unjust or inequitable to give such relief."

In that case a party to a contract was seeking to avoid a specific performance, having himself, by fraudulent practices, prevented the opposite party from strictly keeping the terms of the agreement. Each case must depend upon its own circumstances, in invoking the aid of the chancellor to grant specific performance of a contract. Cheney v. Libby, supra. The facts in this case make the doctrine of Kelsey v. Crowther clearly applicable.

In another aspect of the case, we think it appears that the failure to furnish the abstract within the five days named in the contract did not absolve the complainants from performance on their part. The testimony shows that the abstract was obtained by complainant Stoll from the Columbia Trust Company on the 21st day of February. It was placed in the hands of Messrs. Pirtle & Trabue, lawyers of Louisville, who directed Mr. Richard C. Stoll, a lawyer of Lexington, Ky., to go to Richmond, the county seat of the county in which this property was located, for examination of the abstract, which he did; the abstract being mailed to him there. Mr. R. C. Stoll got the abstract at Richmond on the 23d day of February. This, it seems, had been prepared and placed with the Columbia Trust Company in view of a prior negotiation for the sale of this distillery; having been prepared by Mr. John Bennett, a lawyer of Richmond. On the 24th of February, at Richmond, Mr. R. C. Stoll saw Mr. John Bennett; also Mr. Waller Bennett, one of the respondents, and co-owner of the Warwick distillery property. Mr. John Bennett was instructed to give Mr. R. C. Stoll any necessary assistance with a view to the completion of the abstract. On the following Wednesday, March 1st,

Mr. John Bennett mailed the abstract to Mr. R. C. Stoll, with the following letter:

"Richmond, Ky., March 1, 1899.

"R. C. Stoll, Attorney at Law, Lexington, Ky.—Dear Sir: I herewith send you the abstract of title to the Warwick property. Should you need anything else, let me know. I do not run out the abstract to the cooper shop and warehouse, because that is the same as the title to the W. S. Hume & Company, already made for you.

"Respectfully,                                   John Bennett."

The Hume Company property was other property which the complainants were undertaking to acquire. It does not appear that complainants or their attorneys required any further information from Mr. Bennett. On the contrary, the weight of the testimony is that, on the 6th day of March, Mr. R. C. Stoll, being in Richmond, advised Mr. Waller Bennett that the abstract of the Warwick Company property was satisfactory. No further objection to the abstract appears to have been communicated to respondents or their counsel. It does appear that there was correspondence between the attorney for complainants and complainant Stoll, and that an abstract to his satisfaction was not received by complainant until the 19th or 20th of March. The case upon this branch is left in this attitude, so far as respondents are concerned. After the note of March 1st, no further demand for assistance in perfecting the abstract was made, and on the 6th assurances were given that the abstract was satisfactory. If it can be successfully contended that complainants had a right to refrain from compliance with the contract on their part until respondents had furnished an abstract, then we have the fact that on the 6th day of March, four days before the money was to be paid in upon the terms of the contract, the complainants, having received the abstract, had advised the respondents that the same was satisfactory, and made no further demand upon them in that respect. We cannot doubt that this conduct would amount to a waiver of the agreement to furnish the abstract within the five days named. Had the complainants intended to insist upon a strict compliance with the terms of the agreement as to the furnishing of the abstract, such insistence would be inconsistent with their conduct in accepting the abstract when furnished on the 1st day of March, and the subsequent assurance on the 6th day of March from their counsel that the abstract was satisfactory. It is true that the price of whisky advanced rapidly, and that the Warwick Company was doubtless willing, if not eager, that this contract should be avoided by the nonpayment of the money stipulated into the hands of the trustee. On the 12th day of March they placed the whisky in the hands of a Cincinnati firm for sale, and afterwards sold the whisky to parties in New York at an advance of 12½ cents a gallon; consummating this sale after they had received the letter of March 27th inclosing a deed from Mr. Stoll, and requesting compliance with the contract. This letter was not answered until the 6th day of April, and respondents' attention had been called to it in the meantime by letter of Mr. Stoll on the 5th of April, when they promised to answer "next week." On the 11th of April they did answer that, owing to the failure of complainants to comply with the terms of the contract, they regarded themselves

as released from it. In the meantime they had pressed to a conclusion the sale of and payment for the whisky marketed in New York. While this conduct evinces a desire to make a better sale of the whisky than they had made to complainants, if the contract had terminated, as we find that it had, by the failure to pay the purchase money in on the 10th day of March, the respondents were acting within their legal rights in making a resale of their property.

For the reasons stated, we reach the conclusion that the complainants are not entitled to a specific performance of this contract, with damages, so far as respondents have placed it beyond their power to specifically perform the same. We therefore concur in the result reached by the learned judge who tried the case at the circuit, and the decree refusing specific performance and dismissing the bill will be affirmed, with costs.