### KENTUCKY DISTILLERIES & WAREHOUSE CO. v. BLANTON.

(Circuit Court of Appeals, Sixth Circuit. November 8, 1906.)

No. 1,463.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—SALE OF REAL PROPERTY BY ASSIGNEE—KENTUCKY STATUTES.

Ky. St. 1903, §§ 87, 96, 2356, contain no provisions abridging the common-law power of an assignee for the benefit of creditors to sell real estate at private sale when such power is given by the deed of assignment, the effect of the amendments incorporated in said sections 87 and 96, relating to assignments, by Act March 16, 1898 (Acts 1898, p. 104, c. 42), being to repeal the limitation contained in the original section 87, requiring real property to be sold by an assignee at public sale.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Assignments for Benefit of Creditors, §§ 775–777.]

2. SAME—NECESSITY OF APPRAISAL.

The provisions of Ky. St. 1903, § 2362 et seq., requiring real property to be appraised before being sold under an order or judgment of a court other than an execution, have no application to a private sale by an assignee for the benefit of creditors under power given him by the deed of assignment.

3. SAME—CONTRACT BY ASSIGNEE FOR SALE OF PROPERTY—CONSTRUCTION.

An agreement by an assignee for the benefit of creditors of an insolvent corporation, made in a contract for the sale of property, that he will deliver to the purchaser certificates for at least 90 per cent. of the capital

stock of the corporation, is complied with by the delivery or tender of 90
per cent. of the certificates of stock outstanding, although the articles
of incorporation state the amount of capital stock at a larger amount than
that actually issued.

4. VENDOR AND PURCHASER—CONTRACT OF SALE—WAIVER OF STIPULATIONS FOR
TIME.

The failure of a vendor to deliver an abstract of title to the purchaser
within the time stipulated for in the contract is waived by its acceptance
when delivered and its retention by the purchaser without any objection
on that ground.

5. SPECIFIC PERFORMANCE—CONDITIONS PRECEDENT TO SUIT—TENDER OF PER-
FORMANCE.

It is not essential that a literal and precise tender of performance by
a vendor should precede his filing of a bill in equity for specific perform-
ance of the contract, the legal effect of which is to submit himself to do
everything which may be required of him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Perform-
ance, §§ 249–256.]

6. SAME.

The rule is that when time is not of the essence of a contract for the
sale of real estate or delay has been the fault of the defendant, and
there has been no element of fraud in the bargain, the vendor may, if he
can, clear away defects in his title before final decree in a suit by him
for specific performance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Perform-
ance, § 243.]

7. SAME—DEFENSES.

Facts considered, and held not to show such defects in the title of a
vendor, who contracted for a sale of property which had been conveyed
to him as assignee for the benefit of creditors, or such delay on his part
in performance as to defeat his right to a specific performance.

8. SAME—CONTRACTS ENFORCEABLE—WANT OF MUTUALITY.

A contract by the assignee for the benefit of creditors of an insolvent
corporation for the sale of assigned real estate is not so lacking in mu-
tuality as to defeat his right to enforce specific performance, because, as a
part of the contract, although relatively unimportant, he agreed to ob-
tain the resignations of the directors of the corporation and place the
purchaser in position to secure the election of a board in its own interest,
which agreement he could not be compelled to perform, when he in fact
complied therewith prior to the entry of the decree.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Perform-
ance, §§ 89–99.]

Appeal from the Circuit Court of the United States for the Eastern
District of Kentucky.

For opinion below, see 120 Fed. 318.

This is a bill to compel specific performance of a contract for the sale and
purchase of the Edgewater Distillery Plant, located in Harrison county, Ky.,
and certain personal property connected with its operation and business.
Preliminary negotiations resulted in a contract bearing date of April 6, 1899.
The vendor in the agreement is J. I. Blanton, as assignee under a deed of
general assignment made by the T. J. Megibben Company, a corporation or-
ganized under the laws of Kentucky. The vendee is the appellant, the Ken-
tucky Distilleries Company, a corporation of New Jersey.

The important provisions of the agreement so far as now necessary to be
stated are as follows: (1) The vendor should within 10 days deliver "a com-
plete merchantable abstract of title" to all of the real estate. (2) The vendor
within 10 days also to report the sale to the Harrison county court and pro-
cure an approval by that court. (3) The vendor agreed to deliver deeds in
accordance with the terms of the sale to the vendee within 10 days after such

confirmation; but the vendee was bound to deliver forms of deeds required to the vendor for execution within three days after notice of such confirmation. (4) The contract required that at time of delivery of deeds the property should be "free and clear of all liens, charges, encumbrances, taxes and assessments whatsoever." (5) The consideration to be paid was $40,000, payable in cash on delivery of one deed for the real estate and another for the movables, brands, trade-names, good will, accounts for storage, etc. (6) Without further consideration the vendor agreed to deliver to the vendee 90 per cent. of the certificates of the capital stock of the T. J. Megibben Company, and to procure the resignation of the officers and directors of that corporation, and a meeting of the old board to select the nominees of the purchasing company.

At the March term of the Harrison county court, 1899, Blanton had been, by a regular order of the court, directed to sell all of the assigned estate, either publicly or privately, as he deemed best, the sale, if public, upon terms named, and, if private, to be reported to the court for its approval. The contract of sale bears date of April 6, 1899, but was not in fact signed and delivered for some ten days later. Blanton reported his sale April 22, 1899, which was within the time fixed by the contract. It was confirmed on May 29th, a date as early as feasible under the statute and the practice of the court. On the same day an abstract of title and order of confirmation were sent to Mr. Charles H. Stoll, at Lexington, the counsel for the company and the company's agent most concerned in this sale. No objection was then or ever made that the abstract had not been sooner sent. It was received and retained without objection to the time of its delivery either then or later. This abstract and the proceedings of the county court were sent to Messrs. Pirtle & Trabue for examination and an opinion upon the title. On June 23d, nearly a month later, Pirtle & Trabue wrote the counsel for the assignee that in order to perfect the title four things should be done, namely: (a) The confirmation should be set aside, the property appraised, a resale had, and a new report of sale made within 10 days after such sale; (b) revenue stamps should be affixed to certain deeds; (c) certain liens mentioned should be satisfied and released of record; and (d) the assignor, the T. J. Megibben Company, should join the assignee in his deeds to perfect the record title. The next day, in a personal interview, the vendee's counsel concluded that a resale was not essential, but that an appraisement was important before confirmation. The steps pointed out were at once taken by the vendor, the former confirmation set aside, an appraisement had, and a new report of sale made and approval asked. This report was confirmed July 24, 1899. This result was again reported to Mr. Stoll and inquiry made as to when it would suit to close the matter. Mr. Stoll was then off on his summer vacation, and, under date of July 31st, replied that he was sending the papers to Pirtle & Trabue "for their opinion. Upon its return, if satisfactory, a deed will be prepared and I will be ready for settlement with you." The contract provided that the delivery of the deeds should be at Louisville, at Mr. Stoll's office, upon notice to him of their readiness for delivery. But in his letter Mr. Stoll notified Mr. Blanton that it would be unnecessary for him to go to Louisville, "as arrangements will be made to settle there [meaning Mr. Blanton's home, Cynthiana] upon the execution of the deed." Under date of August 2d, Pirtle & Trabue advised Stoll that the second confirmation was premature and should be set aside, and the report of sale lie over to the August term. They also suggested that the statutory provisions in respect to appraisements might require the sale to be set aside and an appraisement made, and a contract of sale executed in reference to the appraisement and reported and confirmed. But this seems to have been a mere fugitive suggestion; for they conclude their opinion to Stoll by saying: "We are not disposed to hold that the direction that the report of sale shall be filed within 10 days after sale is mandatory, but we have no question that the report of sale should lie over to the August term." Stoll inclosed this letter to Blanton and advised him that he had directed Pirtle & Trabue to correspond directly with him. Thereupon Blanton's attorneys, Messrs. Blanton & Berry, wrote to Pirtle & Trabue, saying, among other things, that they thought no appraisement necessary, and

that, if the whole matter was to be done over again and a new contract of sale made, it would result in great delay. They expressed a willingness to do this if they insisted. A copy of this letter was sent to Stoll. They also stated that the order of confirmation had, by mistake, been entered prematurely, and would be set aside as suggested. Under date of August 22d, Pirtle & Trabue replied, saying: "We think after the order of confirmation of the sale has been entered at the August term of the court that the objections heretofore made will be cured. We think we have expressed this opinion heretofore when we stated that it would not be necessary to begin over again in this matter. We should like to have the order entered on the 28th day of August approving and confirming the sale. The above opinion is given upon the assumption that the last report of sale shows that the appraisement was made prior to reporting the sale. We should like to see the last report of sale. As soon as we hear from you that the order confirming the sale has been made we will prepare a deed and send it to you." August 29th copies of order setting aside former confirmation and of the new order of August 28th confirming it were sent by Blanton, with an inquiry whether any other orders were necessary. To this Pirtle & Trabue replied, under date of August 30th, as follows: "We have received your letter of the 29th inst., inclosing copy of order setting aside the previous confirmation of sale and continuing the case to the August term, and the order entered August 29th confirming the sale ordering the deed, etc. These orders seem to us all that is necessary. We will at once prepare a deed and send it to Mr. C. H. Stoll for his approval with the request that upon approving same he forward it to you for execution, and he will then arrange for the delivery of the deed and the payment of the money."

Up to this time the Kentucky Company had manifested an earnest desire to straighten out the title and bring the trade to a conclusion. For reasons not shown, there occurred, just about the time of this opinion by Pirtle & Trabue, a change of mind as to the desirability of the property. A change of counsel occurred for reasons which may be conjectured, and the question of the sufficiency of the title was submitted to a Mr. Austrian, of Chicago, who is described as of the general counsel of the buying company. Austrian wrote Blanton, under date of September 5th, asking when he would be ready to finally consummate the matter. Blanton thereupon informed him of the conclusion reached by Pirtle & Trabue and their promise to prepare forms of deeds, and that since then he had heard nothing from them or Stoll. He also wrote that he was ready at any time to close the matter. But Mr. Austrian moved slowly. On September 14th he wrote that he would be in Louisville "inside of the next week or ten days, at which time I will be pleased to take up the matter of the Megibben plant and bring the same to a conclusion." Time could not possibly have been regarded at this stage of the matter as of any moment, for Mr. Austrian did not materialize, nor was he heard from. Though written to three times to know the reason of the delay, no reply was elicited until December 13th, when he broke the silence by writing that Blanton's last inquiry of the cause of delay had been "referred to Mr. Levy Mayer, who is at present out of the city. As soon as he returns he will endeavor to give you a reply." This was the first time that Mr. Blanton had ever heard of Mr. Mayer's connection with the case. Blanton, about the date of his last inquiry of Austrian, wrote Messrs. Pirtle & Trabue, asking them to prepare the forms of deeds as promised, as he could not induce Mr. Austrian to reply to his letters. To this Pirtle & Trabue replied, that his letter had been referred to Mr. C. H. Stoll. Mr. Mayer, under date of December 18th, wrote Blanton as follows: "We have carefully gone through the papers and documents connected with the Megibben property transaction and have come to the conclusion, and have advised our client, that you have not complied with the agreement; that the title is imperfect, and that there are several other substantial breaches of the conditions which were to be performed on your side. We have also had the matter gone over by local Kentucky lawyers who have come to the same as we have arrived at. Mr. C. H. Stoll, of Lexington, has also investigated the matter and is quite familiar with the details and is not far from where

you are. Doubtless you could arrange to have a personal conference with him. I am sending him a copy of this reply and also of your letter of the 11th inst." Some correspondence ensued between Mayer and Blanton in a vain effort to induce him, Mayer, to point out where he, Blanton, had not complied with the contract, and wherein his title was imperfect. Mayer, having rejected the property without giving the ground, referred Blanton to Stoll for the information he wanted. Stoll seems to have pointed out only the matters which had months before been pointed out by Pirtle & Trabue and corrected in the manner and by the steps which they had pointed out as satisfactory. Failing to obtain information as to the grounds upon which the vendees rejected the property, this bill was filed. The Megibben Company was joined as a complainant, and certain persons having liens under the deed of assignment to Blanton and by prior mortgage, execution, levy, or attachment were made defendants along with the vendee company for the purpose of securing satisfaction and relinquishment of such liens.

There was a decree for the complainants, and the Kentucky Distilleries Company has appealed.

Levy Mayer, Alfred S. Austrian, and Wm. Marshall Bullett, for appellant.

Helm Bruce, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The errors which have been urged in the decree of the court below will be considered in the order in which the points have been presented by the learned counsel for appellant.

1. It is said that Blanton, as an assignee under a general assignment for benefit of creditors, had no power to make a private sale of the real estate included in the assignment, and that a title resting upon such a sale, although confirmed by the county court, is not such a title as the Kentucky Distilleries Company can be required to take. The deed of assignment to Blanton directs him to sell all of the property, real and personal, "with all reasonable dispatch," and gives him full authority "to sell and convey the real estate" and to make and sign "all necessary deeds and conveyances." That a Kentucky assignee or trustee might be lawfully empowered to sell the trust property, both real and personal, at private sale, independent of some statutory restriction, is not disputed. Hahn v. Pindell, 3 Bush. (Ky.) 189.; Shinkle's Assignee v. Bristow, 95 Ky. 89, 23 S. W. 670. The question is whether any statute of that state forbids an assignee to sell assigned real estate at private sale. The statute law then in force which dealt with the matter of sales by assignees under deeds of assignment are found in the Kentucky Statutes of 1903, in sections 2356, 87, and 96. The provisions are as follows:

"Sec. 2356. No sale made of any real estate by a trustee, by virtue of a deed of trust, or pledged to secure the payment of debts, shall be valid, nor shall the conveyance by such trustee pass the title of the property specified in such deed or pledge, unless the sale thereof shall be in pursuance of a judgment of court or shall be made by an assignee under a voluntary deed of assignment, or the maker of such deed or pledge shall join in a writing evidencing the sale."

"Sec. 87. Personal property conveyed shall be sold by the assignee at private or public sale, as the court may direct; and the assignee shall have power to pass title to the same as fully as assignor could have done at the date of the assignment. Real property [*when sold at public sale*] shall be

sold in the same manner and upon the same terms as real property sold at decretal sale [*provided, the purchaser shall have the right to pay cash and the assignee to accept cash in payment of the purchase price at any such sale*], and the Court may make such orders concerning the advertisement of the sale as it deems proper, and the assignee shall have power to convey and pass all the right and title to the same which the grantors in the deed of assignment had at its date. The report of sale shall be filed by the assignee within ten days after the sale, and if no exceptions are filed thereto, the same shall be confirmed at the second regular term after it has been filed. If exceptions are filed, they shall be heard by the Court and disposed of."

"Sec. 96. The provisions of this chapter shall not prevent actions to settle estates by the assignee, or by any creditor or creditors representing one-fourth of the liabilities, from being brought in the Circuit Court. Provided, That whenever a suit involving the settlement of the estate shall be brought in the Circuit Court of the county in which the assignment is made, the jurisdiction of the County Court shall cease, and all papers relating to the estate, and filed in the County Court, shall be transmitted by the clerk thereof to the clerk of the Circuit Court, and by him filed in such suit; [*and the said Circuit Court shall have all the power and authority to administer and settle up the assigned estate conferred on the County Court by this act, in addition to its power and authority heretofore existing as a chancery court, and the assignee shall have full power and authority to sell the personal and real property belonging to the assigned estate, at public or private sale, and to convey and pass all the right and title to the same which the grantors had in the deed of assignment at its date; and the said assignee shall, within ten days after such sale, report the same to the Circuit Court in which the suit for settlement of the estate is pending and such report shall thereupon be laid over ten days for exceptions, and if no exceptions are filed within that time, same shall thereupon be confirmed. If exceptions are filed, then such exceptions shall be heard and determined by the Court.*]"

The words in italics in sections 87 and 96 were inserted or added to the original statute by an amendment which took effect March 16, 1898. Acts 1898, p. 104, c. 42.

To understand the force and meaning of the amendment of 1898, as shown in the bracketed words above, it is necessary to understand the prior legislation limiting the power of such assignees or trustees under the powers conferred by a deed of trust. The first effort to limit their contractual powers seems to have been under a statute known as the "Act of 1820," which was substantially carried into the Revised Statutes of 1852, which provided that no sale of real estate by any trustee by virtue of any deed of trust "to secure payment of debts shall be valid * * * unless the sale thereof shall be in pursuance of a decree or order of a court or the maker of such deed or pledge shall join in a writing evidencing the sale." Rev. St. 1852, c. 80, § 24. Under that statute the assignee could only sell, either publicly or privately, under a decree or order of a court directing the sale or by the joinder of the maker of the deed of trust in the sale. Thus the law stood until the enactment of February 25, 1893, being section 2356 of the Kentucky Statutes of 1903, as set out above. The plain effect of this last-mentioned statute was to restore to assignees under voluntary deeds of assignment their original common-law power to make sales, either publicly or privately, if authorized by the instrument of trust. It is not the case of statutory powers granted to assignees under voluntary deeds of assignment, but a recognition of their common-law contractual authority. It presupposes that the power is conferred by the maker of the assignment, and

takes that case out of the statutory regulation. This was the law when the act of March 16, 1894, was passed, regulating voluntary assign-, ments. That act, so far as it relates to sales by assignees, appears in the unbracketed parts.of what now constitutes sections 87 and 96 of. the Kentucky Statutes of 1903, as set out above. These two sections were amended by the act of 1898; the amendment appearing in brackets as shown above. Prior to the amendment of 1898 the act of 1894 plainly required that real property sold under a deed of assignment should be sold at public sale only and upon the same terms as real property was required to be sold "at decretal sale," and by such advertisement as should be directed by the court.

The plain and obvious purpose and effect, though awkwardly expressed, of the amendment of that section of the act of 1894, now section 87 of the Kentucky Statutes of 1903, by the insertion of the words "when sold at public sale," was to repeal the requirement of the act of 1894 that real property, when sold by an assignee under an assignment, should be sold at public sale only, and to restore to the assignee under such assignments his common-law power to sell privately if so empowered by the deed of assignment, and so limit the restrictions of the act of 1894 as to require him to sell, when he sold publicly, at a public sale conducted as decretal sales of real property and under such advertisement as the county court should direct. The amendment affecting such sales, when the settlement of the assigned property was carried into a circuit court, very distinctly provides that in such case the assignee shall have power to sell the assigned property "at public or private sale." In both cases the amendment assumes that the power to sell privately is conferred by the deed, and in the first case it is also implied that the assignee shall report any private sale for confirmation, though this is not distinctly so stated. The insertion of the limiting words "when sold at public sale" would have no practical meaning unless it was intended to restore the common-law authority of the trustee or assignee to sell at private sale when the instrument authorized that mode of sale. Neither is it easy to see why the same assignee or trustee might sell publicly or privately when the settlement of the estate was carried into the Circuit Court at his own motion or upon the initiative of creditors and withheld the power unless so removed. The opinion of Judge Cochran upon this matter of interpretation is full, clear, and strong, and we are unable to add any consideration leading to the result stated not already better stated by him. See 120 Fed. 318.

We conclude, therefore, that the assignee had the power to contract for a private sale of the assigned estate.

2. That no appraisement, under section 2362 et seq. of the Statutes of Kentucky, 1903, was made before the sale, is unimportant. An appraisement under the statute is only essential when a public sale is made, and was not necessary if the assignee had the power to make a private sale.

3. The next objection is that the tenth clause of the contract of sale obligated Blanton to procure and deliver, "along with the distillery property," and without further consideration, "certificates for at least ninety per cent. of the capital stock of the aforesaid T. J. Megibben

Company," and would obtain the resignation of the directors of that company and have a meeting called and a board installed nominated by the vendee. It is insisted that the complainants have not and cannot comply with this term. The T. J. Megibben Company was the assignor in the deed of assignment to Blanton. It was hopelessly insol-vent and the assignment included the entire corporate property. The stock of the company was worthless, except, as it is suggested, it might be of value as enabling the purchasing corporation to continue the corporate organization of the insolvent Megibben Company and through it deal with the government in matters of revenue. Complainant tendered in the court below 492 shares of the Megibben stock and the resignations of its directors, and this the court found was a compliance with the terms of the agreement.

The contention of the appellants is that the capital stock of that corporation was $100,000, divided into 1,000 shares of $100 each, and that the 492 shares tendered below was less than 50 per cent. The T. J. Megibben Company was organized in 1888, under the general incorporating statute of the state. The third article provides:

"The capital stock of said corporation shall be $100,000, divided into 1,000 shares of $100 each, one half of which will be fully paid up, the other half to be paid at any time upon the call of the corporation. The capital stock may, by a vote of not less than two-thirds of the stockholders, be increased to any amount not exceeding $200,000.00."

The appellants say that in contracting for 90 per cent. of the capital stock the purchaser "is presumed to have known, relied upon, and to have been contracting with reference to the articles of incorporation of the Megibben Company," and that the contract should be construed as contracting for 90 per cent. of 1,000 shares. In point of fact it does not appear that anything was known in respect to the capital stock of that company. The plain purpose and the only object was to secure 90 per cent. of the "certificates" issued by that corporation, whatever their aggregate might be. The object was control of the corporation. If the Megibben Company had begun business with less than a subscription for 1,000 shares, then its capital stock was less than authorized. But suppose that was the fact. What then? The state might complain. The corporation could not set up the fact as a defense when sued as a corporation, and no one dealing with it could rely upon such a fact as indicating an illegal organization. This is so provided by the very law under which it was organized. Gen. St. 1888, c. 56, §§ 17, 18. If the appellants obtain 90 per cent. of all the outstanding certificates of capital stock, they get all that the contract, under the circumstances of this case, authorize them to demand.

But the appellants say that the stubs of the stock certificate books show the issuance of 1,500 shares, and that 1,000 of these shares are outstanding and not accounted for. This is a gross mistake. The only evidence of the issuance of 1,000 of the shares referred to is the usual entry upon the stubs of the stock certificate book, and across this evidence of issuance is also found equally cogent evidence of cancellation; the word "Cancelled" being written across the entry upon the stub in the handwriting of the secretary of the company, a person long since dead. If the stub entries are evidence tending to show issuance of

the shares referred to, the cancellation entry is evidence tending to show a cancellation. This, in the absence of any evidence tending to show the issuance of any shares other than the 500 originally issued to T. J. Megibben in consideration of the transfer of the distillery property, leaves us with no moral doubt but that only 500 shares were issued, and that a tender of 492 of them is a full compliance with the contract.

4. But the appellants say that time was of the essence of the contract, and that defects in the vendor's title were not cleared, nor liens nor incumbrances removed or released, if in fact all such liens have yet been removed, until the progress of the suit in the court below. Thus, it is said, the contract provided that the vendor should deliver an abstract of title within 10 days from the signing of the contract, but did not do so until after that time had expired, that within 10 days the sale should be reported to the court having jurisdiction over assignees or assigned estates for approval, and that within 10 days after confirmation deeds should be delivered. The effect of the fact that the abstract was not delivered within 10 days after sale has been waived by the acceptance of it, when delivered, without objection, and its retention for months without specifically referring to any other defects in the title than those amendable by the steps taken in the county court suggested by the buyer's counsel as necessary "to perfect title." These steps, when taken, the same counsel pronounced satisfactory, and, as shown by the letter of August 30th, they promised to prepare forms of deeds and send to Stoll, which forms, if satisfactory to him, would be sent to the seller for execution. The sale made to the appellants was, as required by the agreement, reported to the Harrison county court, and an approval asked within 10 days after the actual date of the sale, a date some 10 or 12 days later than the dating of the agreement. The delay in obtaining a satisfactory decree of confirmation was due to compliance with the opinion and request of the appellants, who were not satisfied because there had been no appraisement before the sale was reported. This, as we have already seen, was a nonessential, if, as we have decided, the assignee had the power to make a private sale of real estate. But it is said that the final confirmation was had on August 28th, and reported to the appellant's counsel same day, and that the contract stipulated that within 10 days after such confirmation the vendor should deliver deeds to the vendee and the purchase money be then due and payable, and that no delivery of deeds, within the stipulated time, was made, and that no sufficient tender of performance was made prior to the filing of this suit. It is also said that neither when such delivery of deeds should have occurred, nor at any time prior to the bringing of this bill, was the vendor capable of complying with his agreement, and that certain defects in the legal title existed when the bill was filed, and that certain liens rested upon the property down to the filing of a release during the progress of the cause. But the stipulation of the contract was that the buying company should prepare forms of deeds satisfactory to it and deliver them to Blanton within three days after notice by him of the confirmation of the sale by the court. In addition, the gross price of the entire property was $40,000. The buyer stipulated for one deed carrying the real estate and another the personal

property, including trade-marks, etc., and was to indicate how the purchase price should be apportioned between the two kinds of property. Under the facts of this case Blanton was not obliged to take any further steps until the Kentucky Company indicated its readiness to go on. Until the vendee was satisfied with the title, there was no occasion for the vendor to go forward and pay off existing liens which it was well known the seller must satisfy out of the proceeds of the sale. The delay after counsel expressed themselves satisfied with the county court proceedings was wholly due to the failure of the buyer to examine the abstract then furnished and point out any defects behind the title to Blanton under the assignment. This good faith and fair dealing required the Kentucky Company to do, and, until they indicated the particulars in which the abstract was defective, the seller was not required to do anything more. Willard v. Tayloe, 8 Wall. 557–572, 19 L. Ed. 501. After months of inexcusable delay, the seller being from time to time led to believe that a day would soon be fixed for a meeting and a closing of the matter, there came an out and out refusal of the property justified upon broad claims which gave no idea of the defects subsequently pointed out in the course of this litigation. In legal effect and substance this arbitrary repudiation of the contract was as if Mr. Mayer had said to Mr. Blanton:

"It would be an idle ceremony for me to prepare or deliver to you deeds to execute when we do not intend to accept any tender you can make. You cannot make a good title, and you have broken your contract, and we will not take your property unless you can compel us to do so through the courts."

Under such circumstances it would have been an idle ceremony for the vendor to tender performance, and the defective tender made immediately prior to the filing of this bill should not operate to defeat the relief prayed if other objections of a more substantial character do not exist. In courts of law a more exacting rule may prevail. But in a court of equity, where the legal effect of a bill for specific performance is such that the complainant submits to do everything which may be required of him, it is not essential that a literal and precise tender of performance shall precede the application for the equitable remedy of specific performance. Moore v. Crawford, 130 U. S. 122, 9 Sup. Ct. 447, 32 L. Ed. 878; Cheney v. Libby, 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 818; Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501; Bradford v. Foster, 87 Tenn. 5, 9 S. W. 195.

The case is distinguishable from the case of the Kentucky, etc., Company v. Warwick, 109 Fed. 280, 48 C. C. A. 363, where the appellant company here was denied a decree for a specific performance of a contract for the purchase and sale of a distillery property. In that case the contract provided that the deed should be deposited in escrow, to be delivered if the buyer should, within a date named, pay to the depository of the deeds the consideration money. "The contract," said this court speaking by Judge Day, now Justice Day, "makes payment a condition precedent to the right of the second party to receive the title papers." The buyer did not pay the money within the time named, and time was held to be of the essence of the contract because the terms of the contract and the nature of the property manifested an intent that it should be so. The greater part of the property

then involved was warehoused whisky, an article of fluctuating value, and the price was not deposited with the trustee named until more than a month after the date fixed for the payment, at which time the whisky had increased largely in market value. The contract here involved did not include whisky, and is not shown to have been subject to any great change in market value, and the vendor was not required to deliver deeds within the 10 stipulated days unless he should first be furnished with the forms of deeds satisfactory to the vendee.

But it is said that at the time of the filing of the bill the complainant was not then able to comply with all of the terms of the contract, and that the tender then and thereby made was not sufficient. But this is not necessarily fatal. There is no hint of fraud or unfairness in the original bargain, and no bad faith or unfairness in the subsequent conduct of the vendor. If, therefore, the vendor was able to correct defects in the title, and clear away incumbrances without unreasonable delay, he should be allowed to do so before final decree. The rule is that when time is not of the essence of an agreement or the delay has been the fault of the defendant, and there has been no element of fraud in the bargain, the complainant may, if he can, clear away difficulties in his title before final decree. Hepburn et al. v. Dunlop & Co., 1 Wheat. 179, 4 L. Ed. 65; Kimball v. West, 15 Wall. 377, 21 L. Ed. 95; Jenkins v. Hile, 6 Vesey, 656; Coffin v. Cooper, 14 Vesey, 205; Dresel v. Jordan, 104 Mass. 407; Chrisman v. Partee, 38 Ark. 31; McKinney v. Jones, 55 Wis. 50, 11 N. W. 606, 12 N. W. 381; 2 Story's Equity Jurisprudence, § 777. This is the well-settled doctrine in the state of Kentucky from which state this case comes. Logan v. Bull, 78 Ky. 607; Collins v. Park, 93 Ky. 6, 18 S. W. 1013. The matters in which the complainant's title was defective or incumbered with liens or taxes were those defects which existed when the antecedent tender was made. Without unreasonable delay, they were removed before the decree or the purchasing company was protected by the decree. We have already passed upon the more material of the objections to the title. The contention that the property is still subject to a possible lien in behalf of the government, in consequence of taxes due upon warehoused whisky, we have considered. The fear in this respect has no substance, and we are satisfied with the opinion of the court below upon this point. We quite agree with the opinion of that court that the title of vendor was clear and sound at the time of the decree below.

But it is finally urged that there existed originally such a want of mutuality as is necessary to support a bill for specific performance. In short, it is said that, if the agreement involved a stipulation which one party could not have specifically enforced against the other, that neither party may, for the want of mutuality, avail himself of the purely equitable remedy of specific performance. So far as this objection rests upon the ground that there were certain defects in the title which could only be cured by getting in the title to certain interests which were outstanding in third persons, we need not discuss it, for it is not a case of a speculative sale of something which the seller did not have. Blanton was the owner in trust of the property sold, and entitled as such to perfect a merely defective title. The application of

the doctrine of mutuality of remedy is made to the stipulation requiring the seller to secure the resignations of the directors of the T. J. Megibben Company. Appellants say that a specific performance of this stipulation, from the nature of the subject, could not have been compelled by them, and that this makes the agreement nonmutual. But we have a case where before final decree the resignations of the directors of that company had in fact been secured and filed, and tendered to the defendants below. The obligation of the one side to secure these resignations and of the other to take the property, the other stipulations being also performed, when they should be secured, constitute mutual obligations. For a breach by either an action at law would lie. Why, then, if the seller puts himself seasonably in condition to comply with a stipulation which, from its character, he could not be compelled to specifically perform, shall he be denied the remedy of specific performance? We think he may. Although he could not have been compelled to secure the desired resignations, he has in fact done so, and thus made himself capable of carrying out this as one of the relatively unimportant parts of an entire agreement. We see no good reason why the buyer should now excuse itself from the acceptance of that which it was under obligation to take. In Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955, there was a want of mutuality of obligation; one of the parties having a right to terminate it on giving a stipulated notice. As observed by Judge Cochran, "the same want of mutuality of obligation would have continued to exist had specific performance been decreed," and "to grant specific performance under such circumstances would have been clearly inequitable." The other cases cited by appellant's counsel are all discussed in the opinion of the court below, and clearly shown to have no application to the facts of this case.

The decree of the court below is affirmed.