Nott, Ch. J.,
delivered the opinion of the court:
The contract in this case contained the usual forfeiture clause of Government contracts, to wit, that if, in the judgment of the engineer in charge, the contractor should fail to prosecute faithfully and diligently the work, the engineer in charge, with the sanction of the Chief of Engineers, might annul the contract by giving notice in writing to that effect to the contractor, and upon the giving of such notice all money or reserved percentages due for work orto become due should become forfeited to the United States. But it also contained another provision (specification 49) that “if it should become evident to the engineer in charge that the work is not being-prosecuted with due diligence and will not be completed in the contract time, he, the engineer in charge, shall have power to employ such additional labor as may seem essential to secure the completion of the work in the contract time, deducting the total cost of the same from any moneys due or to become due to the contractor.”
This last provision is novel to the court, and is manifestly an ingenious and excellent device for the benefit of both *435 parties. On the part of the contractor it saves him from the penalties of forfeiture, and on the part of the defendants it saves them from the inconvenience and delay and 'expense of reletting the contract work. It enables the defendants to supplement the contractor’s force by such additional ferce as their engineer may deem advisable; and if the wages paid are the same which the contractor would have paid, it helps the contractor toward completion of his work without putting him to additional cost. Forfeitures are not favored in law, and such a provision as this, which is intended to prevent a forfeiture, should if possible be upheld.
On the 10th of March, 1896, the engineer in charge gave notice to the contractor that he proposed, if the work should not be resumed with suitable force by the 18th instant, “to hire men and teams in accordance with paragraph 49 of the specifications.”
Specification 49 gave the contractor thirty days after written notice, but this notice of the engineer in charge gave him only a week. The contractor, however, seems to have acquiesced, and the point of short notice is not raised. On the 18th March the contractor came upon the ground — the work up to that time having been suspended because of the winter season— with such force as he could bring with him, expecting to find upon the ground his subcontractors ready to resume work under him. He found, however, that his subcontractors had been taken away from him by the engineer in charge at some time prior to the giving of the notice on the 10th of March.
It is well known that in the early state of the law an action would lie, and that actions frequently did lie, for enticing away a man’s servant. In this case the defendants’ officers not only enticed away the contractor’s servants, but they did so by advancing their wages 40 per cent, with the intention of taking the money out of the contractor’s pocket. This was a manifest interference with the contractor’s work by the defendants, tending to hinder him, delay him, and increase his expenses.
At the same time the Government inspector in charge of the work informed the contractor that he would not be allowed to resume work, and forbade him to do so. There is an argument made to prove that the officer merely excluded the con *436 tractor from that particular part of the work, leaving him free to work wherever else he pleased; but taking all of the testimony into consideration it is manifest that the officer intended to prevent the contractor from working, and that the contractor so understood it, and that the officer allowed him to so understand it.
Moreover, the defendants’ officers, under the decision of the Supreme Court in Clark v. United States (6 Wall., 543), had no right to interfere with the claimant in the prosecution of his work; and excluding him from that part of the field of the contract which the engineer in charge, in the same notice of March 10, had designated as the place where work was to be performed, was virtually excluding him from all contract work. This was made plainer by the subsequent action of the engineer in charge allowing the claimant to do a little distinct work styled “finishing work,” the value of which was only $332, and which has not been paid.
On the 10th April, 1896, the defendants gave notice to the contractor that his contract had “been annulled by the Chief of Engineers, which annulment was approved by the Secretary of War.” This notice was signed, in the absence of the engineer in charge, by an assistant engineer, who was neither the engineer in charge nor his successor.
As forfeitures are not favored in law, and as parties who seek to assert a forfeiture are generally held to the very letter of their authority, it may be doubted whether in an action between two persons this notice would be upheld by a court. The contract called for “ the judgment of the engineer in charge,” and gave him alone “power, with the sanction of the Chief of Engineers, to annul the contract by giving notice in writing to the party of the second part.” The Chief of Engineers and the Secretary of War, and the assistant who signed the notice, were not the persons named in the contract. The contractor was entitled to the judgment of the engineer in charge, with the sanction of the Chief of Engineers, and was entitled to “notice in writing to that effect from the engineer in cha/rgeU
But be that as it may, it is plain that the defendants, through their officers, were guilty of a breach of contract by excluding the contractor from- the work and rescinding or *437 attempting to rescind the contract on the 18th of March. A contracting party can not prevent his cocontractor from performing and then annul the contract because he has not performed. The case stops with the action of the defendants on the 18th of March. Their subsequent action certainly did not revive any right in themselves. Moreover, the different parts of the contract are to be considered together. The one provision was antagonistic to the other. If the engineer in charge elected to proceed under specification 49, he could not, until the period of notice had expired, turn round and resort to the other provision of the contract. It was equivalent to a notice that while that condition of affairs lasted the engineer in charge would not annul the contract. It is too plain for argument that one party to a contract can not mislead the other and draw him into additional expenses and losses in this way.
On the 18th of March the contract was not annulled and could not have been; yet on that day the contractor was ousted from the work and prevented from proceeding with it. The simple question is, What were the rights and liabilities of the parties on that day, when the contract work, by the action of the defendants, came to an end?
The court is of the opinion that the contractor should recover for “the finished work’’before spoken of, $332.56; and for the 10 per cent of the contract pay which was retained on the partial estimates, $853.03; and for the railroad fare on 7 carloads of tools, teams, and workmen which he brought upon the ground on the 18th of March, $446; and for materials purchased and the wages, of men at that time, $300; and for 16 teams’ loss of service, ten days, $560, amounting in all to $2,491.59.
The claimant seeks to recover for the loss of service of his teams during the four winter months when his work was suspended and the teams retained in expectation of resuming work in the spring. But it can not be found that he would have sold the teams in the autumn, and it is apparent that he could use them in other spring work after the rescisión of the contract; and to the court these damages seem too remote.
The judgment of the court is that the claimant recover $2,491.59.