## FARRELLY v. UNITED STATES.

## O'BRIEN v. SAME.

(Circuit Court of Appeals, Second Circuit. January 7, 1908.)

### Nos. 92, 93.

1. CONTRACTS—CONSTRUCTION—DAMAGE FOR BREACH.

A contract between the United States and defendants for dredging work to be completed by a time stated provided that if defendants should fail to prosecute the work faithfully and diligently the engineer officer in charge should have power, with the sanction of the Chief of Engineers, to annul the contract by written notice, and that "upon the giving of such notice all money or reserved percentage due or to become due to the party or parties of the second part by reason of this contract shall be and become forfeited to the United States; and the party of the first part shall be authorized, if an immediate performance of the work * * * be in his opinion required by the public exigency, to proceed to provide for the same by open purchase or contract as prescribed in section 3709 of the Revised Statutes of the United States." Such section [U. S. Comp. St. 1901, p. 2484] requires contracts to be let after advertisement, except that, when public exigency requires, open contracts may be made without advertisement. By a subsequent clause it was provided that, in case of a failure "to complete the contract as specified and agreed upon," all sums due and percentages retained should be forfeited, and the United States should be entitled to recover all damages in excess of such forfeiture due to such failure, including the excess cost of completion. Held, that the provision of the latter clause for a recovery of the excess cost of completion did not apply in case of an annulment of the contract under the prior provision before the time fixed for completion had expired, but that in such case no damages were recoverable in excess of the amount due and unpaid and the reserved percentage, expressly provided for.

2. SAME—WAIVER OF BREACH.

The fact that prior to the time of the annulment of such contract the United States had failed to make monthly payments on the work as required by the contract could not be availed of by defendants as a defense against the consequences of such annulment, where they did not elect to treat such defaults as a breach, but continued the work.

3. SAME—RIGHT OF CANCELLATION—SUFFICIENCY OF NOTICE.

Notice having been given to defendants by the engineer officer in charge on the 4th of a month that unless an increased plant was put on the work by the 1st of the succeeding month the contract would be annulled, a notice of annulment, mailed on the 31st and received by defendants on the date specified, was not premature, where no increased plant was then put, or sought to be put, on the work; nor was it necessary that the approval of the annulment by the Chief of Engineers should be in writing, there being no such requirement in the contract.

Ward, Circuit Judge, dissenting in part.

In Error to the Circuit Court of the United States for the Southern District of New York.

This action was brought by the United States against O'Brien, successor of Perkins & O'Brien, contractors, and the City Trust Company, surety under a contract for dredging Narragansett Bay and Providence river. Recovery was had for amounts earned, but not paid, and for what the work actually cost the government after O'Brien was put off it, as against O'Brien $73,578.76 and as against the company $27,242.45. Each defendant sued out a writ of error.

F. J. Swift and George A. King, for plaintiff in error Farrelly.
J. W. Browne, for plaintiff in error O'Brien.
Henry L. Stimson, U. S. Atty., and Winifred T. Denison, Felix Frankfurter, and Francis W. Bird, Asst. U. S. Attys.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The contract was entered into November 16, 1899. By it the parties of the second part agreed to furnish the necessary equipment and do all the work of dredging required in a certain part of Narragansett Bay, in accordance with specifications attached. In consideration of the parties of the second part performing the required work (removing about 2,056,491 cubic yards of material) the party of the first part agreed to pay at the rate of 10.8 cents per cubic yard. All materials and work, before acceptance, were to be subject to a rigid inspection, and the decision of the engineer officer in charge as to quality and quantity was to be final. It was provided that payments should be made monthly when funds are available, 10 per cent. being reserved; also that "the said Perkins & O'Brien shall commence work on or before the 1st day of March, 1899, and shall complete the work on or before the 1st day of July, 1902."

Work was begun on March 1, 1899, and, although at the outset it was apparently pushed sufficiently to satisfy the engineer officer in charge, after several months the rate of progress was such that he repeatedly called upon the contractors to increase their monthly output, and finally, on December 31, 1900, sent a letter to each of the principals, and to the surety, formally notifying them that the work under the contract had not, in his judgment, been prosecuted faithfully and diligently, and that the contract "is hereby annulled." At that time there had been 526,708 cubic yards in all removed, 13,406 in the current month. The engineer supposed there was about 1,500,000 yet to be taken out; but in reality there was only 1,300,000. It was, as the engineer testified, "a very possible thing, easily accomplished, for any one to have completed that contract within 18 months if they had the plant. * * * My judgment was that these men could not control sufficient plant to complete what remained to be done * * * in the remaining time." Since the most important question in the case deals with the results of such annulment, it will be first considered.

The contract contains the following clause, which is found near the close of the document:

"It is further understood and agreed that, in case of failure on the part of the party of the second part to complete this contract as specified and agreed upon, all sums due and percentage retained shall thereby be forfeited to the United States, and that the said United States shall also have the right to re-

cover any or all damages due to such failure in excess of the sums so forfeited, and also to recover from the party of the second part, as part of said damages, whatever sums may be expended by the party of the first part in completing the said contract, in excess of the price herein stipulated to be paid to the party of the second part for completing the same."

Earlier in the contract, and immediately after the clause providing for the beginning and completion of the work, is found the following clause:

"If, in any event, the party of the second part shall delay or fail to commence with the delivery of the material or the performance of the work on the day specified herein, or shall, in the judgment of the engineer in charge, fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of this contract, then, in either case, the party of the first part, or his successor legally appointed (i. e., the engineer officer in charge), shall have power, with the sanction of the Chief of Engineers, to annul this contract by giving notice in writing to that effect to the party (or parties, or either of them) of the second part; and upon the giving of such notice all money or reserved percentage due or to become due to the party or parties of the second part by reason of this contract shall be and become forfeited to the United States; and the party of the first part shall be authorized, if an immediate performance of the work or delivery of the materials be in his opinion required by the public exigency, to proceed to provide for the same by open purchase or contract, as prescribed in section 3709 of the Revised Statutes of the United States."

The section of the Revised Statutes referred to [U. S. Comp. St. 1901, p. 2484] provides that all purchases and contracts for supplies or services shall be made by advertising a sufficient time for proposals when the public exigencies do not require immediate delivery or performance, and that when the public exigency requires the same may be obtained by open purchase or contract without advertisement. The notice of annulment of this contract was given under the clause last above quoted.

It will be seen that, in the event of a "failure to complete the contract as specified and agreed upon," all sums due and percentage retained are forfeited, and the United States is also entitled to recover all damages in excess of such forfeiture due to such failure, including the excess cost of completion. Inasmuch as a stated time is given for completion, it would not ordinarily be possible to declare that there had been a failure to complete, until the time given for such completion had elapsed. It might frequently cause great embarrassment to the government if it should be required to wait till the day when the breach was complete, especially when the conduct of the contractor and the manner in which he was prosecuting the work indicated that he would not complete it on the day named. In order, therefore, to provide for such a contingency, the annulment clause was inserted, giving to the engineer officer the right to terminate the contract in advance of the time allowed for its fulfillment, whenever in his judgment the contractor may fail to prosecute the work faithfully and diligently. This clause, while no doubt necessary, is a drastic one. It allows the government to terminate the contract although—as was the case here—the contractor could easily have fully completed the work in the time yet left, had he mended his ways and been allowed to continue. Moreover, while in one sense it may be said that a contractor who fails to prose-

159 F.—43

cute the work faithfully and diligently for part of the time allowed him is not doing what the contract impliedly requires him to do, nevertheless, where there is no clause in the contract directing that he shall perform some specified part of the work within some specified time, or even that he shall do some work each month, it can hardly be said that he has broken the contract just because he has been so slothful during the first half of the period allowed him that he will have to be very much more diligent during the remainder of the period, in order to fully complete the work on time. Since this clause is thus drastic, and permits the government to terminate the contract while the contractor is still able to complete, and by such completion avoid a breach of its provisions, it might be expected that the damages to be assessed against him would not be so heavy as those provided for when he has actually failed to complete the contract as specified within the time allowed. Reference to the clause shows that it contains no words calling for damages arising from excess cost of completion. It reads merely:

Upon annulment "all money or reserved percentage due or to become due to the party or parties of the second part by reason of this contract shall be and become forfeited to the United States."

It is assigned as error that the judgment entered against plaintiffs in error included damages arising from excess cost of completion, and in the opinion of a majority of the court the point is well taken. The general provision in the later clause for forfeiture and damages "in case of failure to complete as specified and agreed upon" does not apply because on January, 1901—a year and a half before the expiration of the time limited—there had not been a "failure to complete," and because the annulment clause does not refer to the later provision, but provides its own punishment for the negligent contractor, viz., exclusion from the work and forfeiture of all sums due him. If the rule for assessing damages were to be found in the general clause, it is difficult to understand why the draftsman dealt with that subject in the annulment clause. Being a form prepared by the party of the first part, and in the preparation of which the contractor took no part, any ambiguities in its language are to be construed against the party preparing it. But we find no ambiguity. The expressed intention is that exclusion and forfeiture of all money due him is the penalty which a negligent contractor must pay when his contract is annulled.

It will not be necessary to review in detail the many authorities cited in support of the judgment. Those in which there was a completed breach of the contract, and those where the contract did not in terms provide for just what should be the consequences in the event of annulment in advance of the time allowed, are not persuasive here. In one of them, U. S. v. Maloney, 4 App. Cas. D. C. 505, the contract was identical with the one at bar. The point here raised is not discussed at any length; the court holding that:

"The annulling of the contract under this power reserved to the government certainly does not exonerate either the principal or his sureties from liability for all prior breaches of the contract. Such annulment in no manner affects the obligation under the contract that had accrued prior to that time."

In the Maloney Case the contractor wholly failed to do any work whatever. He wholly failed to "commence work on or before the

16th day of June, 1891," which he had expressly agreed to do. There was a complete breach of the contract before action was taken under the annulment clause.

It is further contended that the reference in the annulment clause to section 3709 of the Revised Statutes "inevitably implies" a right to general damages beyond those stipulated for in such clause. We are unable to concur in this proposition. The reference to section 3709 may be sufficiently accounted for on the theory that the contractor is thus forewarned that in case of annulment he must leave the work at once, because his successor may be selected and sent there without the delay resulting from readvertisement. Moreover, where the context specifically describes the consequences to the contractor, implication must be of the clearest to warrant any addition to the enumeration.

In the views above expressed as to the construction of the contract only a majority of the court concur. It is not disputed that at the time of annulment the government had not paid the monthly estimates for work done in September and October (no work was done in November). Without discussing the question whether or not these failures of the government to carry out the terms of the contract were justified by prior default of the contractors, the point here raised may be disposed of by the statement that the contractors at no time elected to treat any such failure as a breach. They did not even notify the engineer officer that without payment they would be unable to proceed with the work. They chose, as they had a right to do, to continue work after the non-payments directly up to January 1, 1901, thus continuing the burden as well as the benefit of such further performance, and disregarding the breach so far as it might excuse them from such further performance.

Objection was raised on motion to dismiss, and reserved by exception, that there was no proof of any written sanction of the Chief of Engineers; but the contract nowhere requires that such sanction shall be expressed in writing. Nor do we find that the annulment was premature. Contractors were notified on December 4, 1900, that unless they have on the work by January 1, 1901, a sufficient plant to dredge at least 100,000 cubic yards per month, the contract would be annulled. The final notice of annulment was mailed to them on December 31st, and not received until January 1st. The case is distinguishable from King v. U. S., 37 Ct. Cl. 428, in which on the named day the contractor appeared with a suitable force. Here no plant sufficient to dredge at least 100,000 cubic yards a month was put, or sought to be put, on the work on January 1st. There was no evidence introduced or offered tending to show that in exercising his judgment as he did the engineer officer did not act with fairness and good faith.

The judgment is reversed, and cause remanded for a new trial.

WARD, Circuit Judge. I do not concur in the opinion of the court so far as the annulment clause of the contract is concerned. It necessarily implied a covenant on the part of the contractors to prosecute the work "faithfully and diligently," and made the Chief of Engineers the absolute judge of performance. He decided that they had broken

the contract in this respect and therefore annulled it. The United States is accordingly entitled to compensation, which is in this case the excess over the contract price paid to new contractors to whom the work was relet, unless its right to compensation has been contracted away.

The opinion of the court treats the provision that upon annulment "all money or reserved percentage due or to become due to the party or parties of the second part by reason of this contract shall be or become forfeited to the United States," as if it were a provision for liquidated' damages. I think it a penalty and that the measure of damages is the usual one, viz., compensation which may be more·or less than the forfeiture. As a measure, forfeiture would be most unsatisfactory—inadequate if the annulment were declared early in the work and perhaps excessive if declared later. The reference to section 3709, Rev. St. U. S., authorizing the United States to relet the work without advertisement if the public exigencies demand it, strongly confirms this opinion. It is not satisfactorily explained as a warning to the contractors that they may have to leave the work at once if the United States relet without advertisement, because upon the annulment of the contract they would have to leave whatever course the United States pursued in respect to reletting. Unless the contractors were to be liable for the loss, if any, of reletting, I do not see why the statute was referred to. The judgment should be affirmed, with, however, a deduction of the amount of the reserved percentages, $5,409.99, in favor of the principal, John J. O'Brien.