## SMITH v. BROWNING.

(Supreme Court, Appellate Division, First Department. January 21, 1916.)

**1. VENDOR AND PURCHASER ☞134—PERFORMANCE OF CONTRACT—INCUMBRANCES—TRANSFER TAX.**

Transfer Tax Law (Consol. Laws, c. 60) § 220, imposes a tax upon the transfer of any property by will. Section 222 provides that the taxes imposed thereby shall be due and payable at the time of the transfer, and section 224 provides that every such tax shall be a lien upon the property transferred until paid. Plaintiff's husband devised and bequeathed to her property upon which a tax of $3,887.61 was assessed. Included in such property was mortgaged real estate, the equity in which was reported by the appraiser to be of no value. Before the institution of proceedings to assess the tax, plaintiff contracted to sell such real estate to defendant, free and clear of all liens or charges except the mortgage, and at the date for closing the title the tax was still undetermined and unpaid. Held, that the premises were incumbered with the transfer tax, and plaintiff by tendering a deed did not comply with the contract, as the tax is a lien upon all the property transferred to the particular transferee, and the tax is not segregated and an aliquot part collectible out of each item.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 238, 250–254, 258; Dec. Dig. ☞134.]

**2. VENDOR AND PURCHASER ☞144—PERFORMANCE OF CONTRACT—INCUMBRANCES—INDEMNITY.**

Where plaintiff contracted to sell real estate to defendant free and clear of all liens except a mortgage, and at the time for closing the title the land was subject to the lien of a transfer tax, defendant could not be required to accept a surety bond or other indemnity against such tax.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 271–275; Dec. Dig. ☞144.]

**3. SPECIFIC PERFORMANCE ☞92—CONTRACT—TIME AS OF THE ESSENCE.**

Plaintiff contracted to sell land to defendant free and clear of all liens except a mortgage, but at the date for closing the title the property was subject to the lien of a transfer tax. Defendant rejected the title, and plaintiff sued for specific performance, and before the decree was ren-

dered had the amount of the tax determined and paid it. Defendant was a builder, and told plaintiff's representative that he expected to tear down a building on the land and immediately build an apartment house thereupon. He had contracted with an architect to build three identical apartment houses, had secured two plots of land, and when he failed to get the premises in question bought another plot. At the time of the contract he was willing to assume the mortgage, because he expected to pay it from his building loan, but, having completed his three houses, he did not at the time of the trial have sufficient money to carry out the contract. *Held*, that these considerations made time of the essence of the contract, and made it inequitable to require performance from defendant at the time of the trial.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 233–244; Dec. Dig. ☞92.]

Appeal from Special Term, New York County.

Action by Laura N. Smith against Edward W. Browning. From a judgment for plaintiff, entered after a trial at Special Term, defendant appeals. Reversed, and judgment ordered for defendant.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and PAGE, JJ.

Joseph Day Lee, of New York City, for appellant.

John Thomas Smith, of New York City, for respondent.

PAGE, J. The plaintiff became possessed of the property in question by virtue of a devise in her husband's will. The provisions thereof are as follows, in so far as they relate to the plaintiff: (1) A bequest of $200,000. (2) A bequest and devise of a dwelling house in New York City (No. 43 West Seventy-Second street) with its contents, and also certain real property in Kingston, Ulster county, with the contents of the dwelling house thereon, and also automobiles, carriages, wagons, harnesses, and all other personal property in the barn and stables on the Kingston property. (3) A life estate in the residuary estate. The will was probated January 4, 1914.

On April 15, 1914, the plaintiff agreed to sell the premises 43 West Seventy-Second street to the defendant, subject to certain restrictive covenants and such facts as an accurate survey will disclose as to encroachments, for the sum of $69,000, payable $250 on signing the contract, $3,750 upon delivery of the deed, and assuming a mortgage of $65,000 then a lien upon the premises, deeds to be delivered May 2, 1914. The contract further provided that at the date thereof certain taxes were due and unpaid, and that the holder of the mortgage had called $15,000 of the principal, which the defendant agreed to pay at the closing of the title. Provision was made for the adjustment of interest, insurance premiums, and payment of taxes out of the $3,750, and the plaintiff was to pay any deficiency that might arise; "it being the intent and purpose of this agreement that the purchaser shall acquire said premises as of the date fixed for the closing of title, free and clear of all liens or charges, save as regards the principal of said mortgage." It further provided that the purchaser agreed to adjourn the closing of title for one week if the seller should request such adjournment. The date for closing was adjourned to May 13, 1914.

Prior to the date for closing no proceedings had been instituted to

ascertain the amount of the transfer tax, and therefore the same was undetermined and unpaid. The defendant refused to accept a tender of the deed upon the ground that the transfer tax was a lien upon the premises. The plaintiff's attorney then offered to institute within 10 days a proceeding to have the property declared free from the tax, to pay the state comptroller $40, or deposit that sum with the defendant's attorney, or to give a bond of the plaintiff, with the Southern Surety Company as surety, to the defendant, in the sum of $10,000, conditional upon the payment of any lien that might be assessed against the property by reason of the nonpayment at that time or in the future of the transfer tax. These offers were declined.

This action for specific performance of the contract was commenced on or about July 23, 1914, and trial was held on March 8, 1915. On February 12, 1915, the transfer tax, amounting to $3,887.61, was paid; the tax having been assessed on January 20, 1915. In the report and appraisal, which was confirmed, the value of the property above the mortgage loan was stated to be nominal, and that there was no value of the equity at the time of the testator's death. A decree for specific performance of the contract has been entered.

[1] The principal question to be determined on this appeal is whether the transfer tax as a whole became a lien upon each item of property transferred by the will of the testator to the plaintiff, or did it become a lien upon each specific bequest or devise to the extent only of the amount of the tax as determined by the value of the property included therein? This question does not appear to have been heretofore adjudicated. The Transfer Tax Law, so far as is material to this case, provides (section 220):

"A tax is hereby imposed upon the transfer of any * * * property * * * to persons * * * by will * * * from any person dying seized or possessed thereof while a resident of the state."

Section 221:

"Upon a transfer taxable under this article of property * * * of an amount in excess of the value of $5,000 to * * * the wife * * * of the decedent * * * the tax on such transfer shall be at the rate of one per centum on any amount in excess of $5,000."

Section 222:

"All taxes imposed by this article shall be due and payable at the time of the transfer."

Section 224:

"Every such tax shall be and remain a lien upon the property transferred until paid. * * *"
"The transfer tax is not a tax upon property, but upon the right of succession to property. * * * It accrues, therefore, at the same time the estate vests; that is, upon the death of the decedent." Matter of Penfold, 216 N. Y. 163, 167, 110 N. E. 497.

It is the transfer of the property that is taxed. The lien of the tax attaches to the property so transferred immediately upon the death of the decedent. In ascertaining the amount of the tax, the aggregate of the value of all the items transferred is the basis for computation, and

the tax is not segregated and an aliquot part thereof collectible out of each item, but it becomes payable and is a lien upon all the property transferred to the particular individual. I am of the opinion, therefore, that the premises under consideration were incumbered with the transfer tax, and that the plaintiff could not tender a title in accordance with the terms of the contract until she had paid such tax.

[2] The offers to indemnify against the tax do not affect the defendant's position. He was entitled to a title free and clear from all incumbrances except those specified in the contract, and could not be required to accept anything in lieu thereof.

[3] The respondent claims further that time was not of the essence of the contract, and that the decree should be sustained for the reason that prior to the trial she had paid the tax and there had been no change in the property. The defendant proved, however, that his occupation was that of a builder, and that he had told the plaintiff's representative that he expected to tear down the building and immediately build an apartment house upon the lot. It also appeared that he had made a contract with an architect to build three identical apartment houses; that he had secured two plots, and that when he failed to get these premises he bought another plot; that the reason he was willing to assume the mortgage in this case was that he expected to pay it from his building loan; and that he had completed his three houses and did not at the time of the trial have sufficient money to carry out the contract. I am of the opinion that these considerations make time of the essence of the contract, and that it would be inequitable to have required at the time of the trial a performance on the part of the defendant.

The defendant expended $124 for a search of the title, and has counterclaimed for this amount and the $250 paid on account of the purchase price. I find nothing in the evidence to sustain the finding that the refusal of the defendant to perform the contract was not made in good faith, which is erroneously embodied in the fifth conclusion of law. That finding and the seventeenth finding of fact, and all the conclusions of law contained in the decision of the Special Term are reversed.

The judgment appealed from is therefore reversed with costs, and judgment ordered in favor of the defendant for the sum of $374, together with interest and costs. Conclusions of law, and other findings of fact, if desired, may be submitted upon the settlement of the order herein. Settle order on notice. All concur.