## EMPIRE GAS & FUEL CO. v. STERN.*

(Circuit Court of Appeals, Eighth Circuit.
October 13, 1926.)

No. 7195.

**1. Contracts �kö 164.**

Contract, draft, and lease, which are all part of one transaction, will be read and construed together.

**2. Mines and minerals �kö57.**

Title to land, having outstanding oil and gas lease and involved in pending suit for specific performance of contract for lease, *held* not "merchantable."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Merchantable.]

**3. Mines and minerals �kö57—Oil company held not to have waived defect in title to land covered by lease, caused by outstanding oil and gas lease and pending litigation.**

Oil company, intended lessee, *held* not to have waived defects in title to land covered by oil and gas lease because of knowledge of defect caused by outstanding lease on adjoining tract, particularly since there was pending litigation itself sufficient to render title unmerchantable.

*Rehearing denied January 18, 1927.

**4. Vendor and purchaser �kö130(2).**

In absence of provision in contract to the contrary, agreement for merchantable title means such a title fairly deducible of record.

**5. Mines and minerals �kö57.**

In view of circumstances showing grantor of oil lease insisted on early performance and refused to furnish abstract, oil company was not required to go beyond records in determining condition of title.

**6. Mines and minerals ⊚⋙57.**

Under contract for oil and gas lease, with time of the essence, purchaser was under no duty to give notice of discovered defects to seller before rejection of title, as provided by contract.

**7. Contracts ⊚⋙316(1).**

Provision of a contract may be waived.

**8. Contracts ⊚⋙316(6).**

Waiver cannot bring back to life a contract theretofore fully performed and at an end.

**9. Frauds, statute of ⊚⋙125(1).**

Oral contract for sale of interest in land, with no memorandum in writing as required by statute, is nonenforceable.

**10. Mines and minerals ⊚⋙57.**

Where contract for purchase of oil lease was performed by both parties, and terminated according to its terms because title was not merchantable, subsequent conduct of intended purchaser could not constitute "waiver" of defects in title.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waiver.]

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Action by Sigmund Stern against the Empire Gas & Fuel Company. Judgment for plaintiff, and defendant brings error. Reversed, with instructions.

Warren T. Spies, of Bartlesville, Okl., and Leslie J. Lyons, of Kansas City, Mo., for plaintiff in error.

Paul R. Stinson, of Kansas City, Mo. (Isaac P. Ryland, Frank A. Boys, Arthur Mag, Robert K. Ryland, and William H. Wilson, all of Kansas City, Mo., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and FARIS and PHILLIPS, District Judges.

PHILLIPS, District Judge. This is a writ of error from a judgment recovered by Sigmund Stern against the Empire Gas & Fuel Company.

On September 9, 1922, Sigmund Stern and Sybil C. Stern, his wife, executed an oil and gas lease running to the Empire Gas & Fuel Company. On September 11, 1922,

C. J. Shortess, as the agent of the Empire Company, executed the following instrument:

"September 11, 1922.

"Sigmund Stern—Dear Sir: Pursuant to our agreement of this date, where you are forwarding lease with sight draft attached to Union National Bank, Bartlesville, Okl., with the understanding that said lease and draft are to be taken up within five days from September 11, 1922, providing the title to said land covered by said lease, being south one-half of the northwest one-fourth, section 27, township 27, range 6, is found to be merchantable, we herewith agree to have the title examined within five days from September 11, 1922, and we further agree that this lease and draft will be taken up promptly and money forwarded to Farmers' State Bank, Leon, Kan., provided the title is found to be merchantable subject to an incumbrance of $15,000. If the title is not merchantable, the lease is to be returned to the Farmers' State Bank, Leon, Kan., five days from the date of this agreement, and by said Farmers' State Bank to be returned to Stern Bros.

"Empire Gas & Fuel Company,

"By C. J. Shortess, Their Representative."

Shortess prepared the following draft to be forwarded with the lease:

"No. 15219.   $20,000/00.   Sept. 11, 1922.

"No protest

"Five days after date pay to the order of Sigmund Stern twenty thousand dollars, for oil and gas lease covering S. ½ N. W. ¼, 27—27—6, Butler county, Kan., subject to approval of title by our legal department, value received, and charge same to account of          Land and Leasehold Department

"By C. J. Shortess.

"To Empire Gas & Fuel Co. 976.

"At Union National Bank, Bartlesville, Oklahoma.

"Bank to notify R. C. Russell, Treas., on receipt of draft."

On September 11, 1922, Sigmund Stern, by his agent, Morris Stern, delivered the draft and lease to the Farmers' State Bank of Leon, Kan., with instructions to forward them to the Union National Bank of Bartlesville, Okl. On the same day the Farmers' State Bank forwarded the documents to the Union National Bank, accompanying them with the following letter:

"Leon, Kansas, Sept. 11, 1922.

"Union National Bank, Bartlesville, Okl.:

"We inclose for collection and return. Report by number.  *  *  *  N. P. 83-1252.

*   *   *   *   *   *   *

"On whom drawn       Amount 20,000.

"Sight draft on Empire Gas & Fuel Co. with lease attached, deliver lease only upon payment of draft; if not paid by Sept. 16, 1922 return to this bank.

"Farmers' State Bank,

"By H. C. Richardson, A. C."

Morris Stern, a witness for Sigmund Stern, detailed the preliminary negotiations which led up to the contract. He testified that Shortess requested an abstract; that he advised Shortess that there was a loan on the property, the abstract was deposited with the loan, and it would take two or three weeks to get the abstract; and that the Empire Company had recently purchased a lease on the adjoining eighty acres in the same chain of title. He testified further as follows: "I said to him: 'There's only one thing that can concern you as to this title: To see that there have been no transfers by Sigmund Stern. The title is just as it was. You don't require more time for that. You can have one of your men go to the records in Eldorado, if you want to do that, and satisfy yourself. *But we cannot give you any length of time for the purpose of examining abstracts.*'" (Italics ours.) He further testified that Shortess stated he would have to get the consent of his company to handle the matter by examining the records; that Shortess left for the purpose of telephoning the home office of the Empire Company at Bartlesville, and shortly thereafter returned and stated, "Very well, we can waive that." In response to the following question: "What, if anything, did Mr. Shortess say to you about the manner that the Empire Company would follow in the examination of the title?"—Morris Stern answered, "He stated that he would have one of their attorneys look over the records in Eldorado."

The Empire Company employed Judge Benson, of Eldorado, to examine the records.

On September 14, 1922, Judge Benson gave a written opinion to J. C. Kennedy, superintendent of the land department of the Empire Company, based upon an examination of the records. The opinion stated that the records disclosed an oil and gas lease dated September 7, 1920, running from Sigmund Stern and wife to W. M. Hastie; that on January 17, 1921, Hastie assigned this lease to Ferdinand Palma, trustee under a declaration of trust dated December 6, 1920; that on January 31, 1922, Palma executed a release of this lease to Sigmund Stern and

wife; that there was nothing of record to show that Palma had authority as such trustee to execute the release. The opinion further stated that a suit for specific performance of an alleged contract for an oil and gas lease involving the land had been brought by W. C. Allen and Ed Naus against Sigmund Stern, Max Stern, and Henry Stern, and that such suit was pending; that Charles W. Stieger, attorney for plaintiffs, in the Allen-Naus suit, had stated that, while he had not seen his clients, he understood the suit had been settled, or that the plaintiffs had decided to dismiss it, and he would not object to a dismissal of the suit.

Stieger testified at the trial of the instant case that he brought the suit in good faith, believing that Allen and Naus had a good cause of action, and that the same was not dismissed until October 6, 1922.

Kennedy received Judge Benson's written opinion about four o'clock p. m., September 15, 1922. He submitted the opinion to Mr. H. O. Castor, chief counsel, and Mr. Hayes McCoy, assistant chief counsel, of the Empire Company. About noon, Saturday, September 16th, they advised Kennedy that the title was not merchantable and that they would not approve the same. Thereupon Kennedy wrote and delivered the following letter to the Union National Bank:

"September 16, 1922.

"Union National Bank, Bartlesville, Oklahoma—Gentlemen: On account of the dates in trust agreements being at such variance, and on account of pending litigation affecting this acreage, we are returning lease for proper disposition, and we do not believe we would care to consider it any further. Very truly yours, [Signed] J. C. Kennedy, Assistant Superintendent, Land and Lease Division."

The Union National Bank returned the draft and lease to the Farmers' Bank, advising it that they were returning them because the title was defective.

On Monday, September 18th, the Farmers' Bank notified Morris Stern that the papers had been returned, and he forthwith advised Sigmund Stern of that fact.

Sigmund Stern testified that on September 18th, after receipt of advice that the papers had been returned, he talked to Mr. Straight, general manager of the Empire Company, over the telephone; that in the course of the conversation he stated to Mr. Straight that the Empire Company had rejected the lease on account of the title; that the title was good, and apparently some mistake had been made; and that Mr. Straight stated that, if the title was good, the Empire Company would take the lease.

On the same day, Sigmund Stern wrote a letter to the Empire Company, which, in part, read as follows:

"As your counsel has obviously made a mistake, as we know the title is good, we would like for you to advise us to send this lease to you again with sight draft attached, and that you will honor same without any further delay."

On September 19, 1922, Kennedy wrote the following letter to Sigmund Stern:

"Mr. Straight, our general manager, called my attention to your telephone inquiry about consummating the purchase of oil and gas lease on the S. $\frac{1}{2}$ N. W. $\frac{1}{4}$ 27—27—6.

"As explained in the letter returning the papers to the bank, the title is not in such condition that our legal department will accept it. The dates in the trust agreements seem to be at variance, and the company on whose behalf the old lease was released is not shown in the chain of title. There is also a suit involving the title to the lease.

"I understand that you are securing curative papers to correct the title, and that they will be sent to us for further consideration. If that is the case, we would like to have them at once."

Sigmund Stern further testified that on or about September 20th he talked to Mr. Kennedy over the telephone concerning the matter; that he told Mr. Kennedy that the Hastie lease had expired by its own terms, that no well had been commenced, and no rentals paid as provided in the lease; that Mr. Kennedy stated that it would be sufficient to take care of the defect caused by the Hastie lease to secure affidavits from Hastie and one McSmith that no well had been commenced, and that no rentals had been paid as provided in the lease.

Sigmund Stern further testified that he discussed the matter again over the telephone with Kennedy on October 3d; that he advised Kennedy he was experiencing some difficulty in obtaining the affidavits, but would continue to try to obtain them; that Kennedy stated that, if the affidavits could not be secured, it would be necessary to secure a decree quieting the title.

Sigmund Stern failed to obtain the affidavits, and thereupon brought a suit to quiet title and secured a decree quieting the title.

On February 16, 1923, Sigmund Stern wrote a letter to the Empire Company, advising that he had quieted the title at the

request of the Empire Company, and demanded that it take the lease.

On February 19, 1923, Kennedy wrote Stern as follows:

"Referring to your letter of February 16, 1923, asking us to take favorable action towards purchasing a lease on the S. ½ N. W. ¼ of section 27, township 27, range 6, Butler county, Kan., desire to advise that our attorneys, some time ago, declined to accept title to this acreage, in consequence of which, we presumed the matter had been closed."

Thereupon Sigmund Stern brought this suit to recover damages for breach of the contract. In his complaint he set up two causes of action.

The first count set up the contract, and alleged that pursuant thereto the plaintiff executed and acknowledged the lease and forwarded the same to the Union National Bank; that the title was merchantable, and that the Empire Company wrongfully and without reasonable cause or excuse breached the contract by refusing to accept the lease and pay the sum of $20,000 therefor.

The second count alleged the same facts, and also alleged certain acts of waiver.

The Empire Company answered, and alleged that the title was not merchantable on September 16, 1922, denied the alleged acts of waiver, and set up the statutes of frauds of Kansas and Missouri.

At the close of the evidence, both parties moved for an instructed verdict. The court instructed a verdict for the plaintiff, but submitted the question of the amount of damages to the jury. The jury assessed the damages at $22,500, and judgment was entered for that amount.

[1] The contract, draft, and lease were all part of one transaction. In the eye of the law, they are one instrument. They will be read and construed together, as if they were one in form as they are in substance. Metropolitan Securities Co. v. Ladd (C. C. A. 2) 173 F. 269, 273, 97 C. C. A. 435; Thompson v. Jost, 108 Neb. 778, 189 N. W. 169, 171; 6 R. C. L. p. 850, § 240; 13 C. J. p. 528, § 487. When so construed, the terms of the agreement were in substance these: That Sigmund Stern would execute, acknowledge, and forward the lease to the Union National Bank of Bartlesville, Okl., accompanied by a sight draft, dated September 11, 1922, payable five days after date, drawn on the Empire Company, for the sum of $20,000, the agreed purchase price of the lease; that the Empire Company would cause an examination of the real estate records at Eldorado, Kan., and determine therefrom whether the

title was merchantable; that, if the title was merchantable, the Empire Company would accept and pay the draft on or before September 16, 1922; that, if the title was not merchantable, the Union National Bank, immediately upon the expiration of five days from September 11, 1922, would return the lease to the Farmers' State Bank; and that the latter bank would return the lease to Sigmund Stern.

The first question presented is whether the title was merchantable on September 16, 1922. This court defined a merchantable title in the case of Savage v. Shields, 293 F. 863 at page 867, as follows:

"A marketable title means a title free from reasonable doubt as to its goodness, and one of such a character as will reasonably assure an ordinarily prudent person freedom from litigation and peaceful enjoyment of the property. 5 Words and Phrases, First Series, p. 4388, and cases cited."

There was an outstanding oil and gas lease of record and an assignment thereof to a trustee. The trustee had executed a release thereof. The records disclosed that the powers of the trustee were defined by a declaration of trust, and whether the trustee had power to execute such release did not appear of record. This oil and gas lease was a cloud upon the title, nowithstanding the fact that it had been forfeited by the lessees through their failure either to commence a well or pay rentals in compliance with the terms of the lease, because the facts upon which the forfeiture of the lease rested were not matters of record, but could only be established by parol evidence. Linscott v. Moseman, 84 Kan. 541, 114 P. 1088, 1090.

[2] In addition to the oil and gas lease there was a suit for specific performance of a contract alleged to have been made by Max Stern, acting in behalf of himself, Sigmund Stern, and Henry Stern. While the title to the property was in the name of Sigmund Stern, Henry Stern had an equitable interest therein. Counsel for plaintiffs in the specific performance suit agreed with Judge Benson to dismiss the same. At that time he had no authority to dismiss the suit and he did not dismiss it until October 6, 1922. The title, therefore, was not one so free from reasonable doubt as to its goodness and of such a character as would reasonably assure an ordinarily prudent person freedom from litigation and peaceful enjoyment of the property. The oil and gas lease and the pending litigation cast such clouds upon the title as to render it not merchantable. Linscott v. Moseman, supra; Moore v. Williams,

115 N. Y. 586, 22 N. E. 233, 234, 5 L. R. A. 654, 12 Am. St. Rep. 844; Swayne v. Lyon, 67 Pa. 436; Dobbs v. Norcross, 24 N. J. Eq. 327; Williams v. Bricker, 83 Kan. 53, 109 P. 998, 30 L. R. A. (N. S.) 343; Maupin on Marketable Title (3d Ed.) p. 774, § 284.

[3] The second question presented is whether there was a waiver of the defects in the title.

Counsel for Sigmund Stern contend that the Empire Company had knowledge of the defect caused by the outstanding oil and gas lease at the time it contracted with Stern, and therefore waived the same. They base this contention upon the fact that shortly before September 11, 1922, the Empire Company purchased a lease on an adjoining 80 acres of land in the same chain of title, the abstract to which disclosed the Hastie lease and the trustee's release thereof. We do not think the evidence sustains this contention. It is true that counsel for the Empire Company examined an abstract upon such adjoining 80 acres of land which disclosed such lease and release, but counsel for the Empire Company then were concerned only with the particular tract of land, the title to which they were examining, and would pay no attention to other lands not immediately concerned. We do not think it can be said that the officers of the Empire Company, when they contracted with Stern, had in mind such outstanding oil and gas lease and its effect upon the title, and waived the defect caused thereby. Furthermore, the record clearly shows that the representatives of the Empire Company, who carried on the negotiations with Morris Stern, in no wise depended upon their own judgment as to the condition of the title, but expressly contracted that the title should be passed upon by the attorneys for the Empire Company. But, even if we cast aside the question of the release of the oil and gas lease, the pending litigation was itself sufficient to render the title unmerchantable.

Counsel for Sigmund Stern further contend that it was the duty of the Empire Company to examine, not only the records, but extrinsic facts bearing on the title, and that such an examination would have led to the discovery that the lease had been forfeited, and that the pending suit was not well founded.

[4] In the absence of provision in the contract to the contrary, an agreement for a merchantable title means such a title fairly deducible of record. Moore v. Williams, supra; Irving v. Campbell, 121 N. Y. 353, 24 N. E. 821, 822, 8 L. R. A. 620; Lockhart v.

Ferrey, 59 Or. 179, 115 P. 431, 433; Watson v. Boyle, 55 Wash. 141, 104 P. 147; Whittier v. Gormley, 3 Cal. App. 489, 86 P. 726; McCroskey v. Ladd, 3 Cal. Unrep. Cas. 433, 28 P. 216, 217; Walters v. Mitchell, 6 Cal. App. 410, 92 P. 315, 317; Maupin on Marketable Title (3d Ed.) § 283, p. 767; 27 R. C. L. p. 494, § 213; Thompson on Real Property, vol. 5, § 4296; 39 Cyc. p. 1458.

In Moore v. Williams, supra, the court said:

"It is familiar law that an agreement to make a good title is always implied in executory contracts for the sale of land, and that a purchaser is never bound to accept a defective title, unless he expressly stipulates to take such title knowing its defects. His right to an indisputable title clear of defects and incumbrances does not depend upon the agreement of the parties, but is given by the law. Sugd. Vend. (13th Ed.) 14; Rawle, Cov. 430; Burwell v. Jackson, 9 N. Y. 535; Delavan v. Duncan, 49 N. Y. 485. * * * A good title means, not merely a title valid in fact, but a marketable title, which can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as a security for the loan of money. A purchaser will not generally be compelled to take a title when there is a defect in the record title which can be cured only by a resort to parol evidence, or when there is an apparent incumbrance which can be removed or defeated only by such evidence; and, so far as there are any exceptions to this rule, they are extraordinary cases, in which it is very clear that the purchaser can suffer no harm from the defect or incumbrance."

[5] The evidence introduced in behalf of Sigmund Stern clearly established that he refused to furnish an abstract, that the parties agreed the records would be examined for the purpose of determining the condition of the title, that Sigmund Stern was insisting upon early performance, and that the time for examination was short. In view of these circumstances, we do not think it was contemplated by the parties that the Empire Company should go beyond the records in determining the condition of the title. Neither do we think that within the five-day period fixed by the contract the Empire Company could have ascertained from sources on which it could have safely relied that the title was merchantable.

[6] Counsel for Sigmund Stern further assert that it was the duty of the Empire Company to advise him of the defects and give him a reasonable opportunity to correct

them, and that its failure so to do constituted a waiver of the defects. There are two reasons why this contention cannot be sustained: The testimony of the witnesses for Sigmund Stern showed that he was insisting upon acceptance or rejection within a period of five days. The contract, on its face, expressly provided that the purchase price should be paid within five days from the date of the contract. It further provided that, if the lease was not accepted and paid for within five days, it should be returned to the Farmers' State Bank, and by the latter bank to Stern. Time was clearly of the essence of the contract. Where time is of the essence of the contract, there is no duty upon the purchaser to give notice of discovered defects to the seller and afford the seller a reasonable time to correct the same. Maupin on Marketable Title (3d Ed.) § 310; Sugden on Vendors (14th Ed.) 395; Janulewycz v. Quagliano, 88 Conn. 60, 89 A. 897, 898; Rugg v. Midland Realty Co., 261 Pa. 453, 104 A. 685, 686; Minto v. Moore, 1 Ala. App. 556, 55 So. 542; Kentucky Distilleries & Warehouse Co. v. Blanton (C. C. A. 6) 149 F. 31, 41, 80 C. C. A. 343; Smith v. Browning, 171 App. Div. 278, 157 N. Y. S. 71; Id., 225 N. Y. 358, 122 N. E. 217. The second reason is that the contract expressly provided otherwise. It provided that, if the title was found unmerchantable, the lease should be returned to the Farmers' State Bank, and by it to Sigmund Stern. It follows, therefore, that no duty rested upon the Empire Company to specifically point out the defects.

We therefore conclude that the title was not merchantable on September 16, 1922, and that the defects making it unmerchantable were not up to that time waived by any act or omission of the Empire Company.

The only obligations of the Empire Company under the contract were to examine the title and determine in good faith within the contract period if the title was merchantable, and, if found merchantable, to accept and pay for the lease, and, if not merchantable, to advise the Union National Bank, in order that the papers might be returned at the expiration of the five-day period as provided in the contract. The Empire Company fully performed its obligations, and did not breach the contract. The sole obligation of Sigmund Stern under the contract was to execute and forward the lease to the Union National Bank for delivery to the Empire Company not later than September 16, 1922, upon payment by the Empire Company of the purchase price, provided the title was found to be merchantable. The contract imposed no obligation upon Sigmund Stern to furnish a merchantable title. On the contrary, it expressly provided that, if the title should be found not merchantable, the lease should be returned to Stern Bros. Sigmund Stern performed every obligation on his part, and did not breach the contract. Therefore on September 16, 1922, the contract had been fully performed by both parties, and by its express terms had come to an end, and neither party was further obligated thereunder.

[7] Counsel for Sigmund Stern rely on the subsequent conduct of Kennedy and Straight as acts of waiver. They cite a number of cases in support of their contention. An examination of these cases will disclose that in every instance there was either the waiver of a provision of the contract or the waiver of a breach of the contract. A provision of a contract may be waived. Malmquist v. Peterson, 149 Minn. 223, 183 N. W. 138; Bricker v. Great Western Accident Ass'n, 161 Iowa, 61, 140 N. W. 851, 852; Alabama Tailoring Co. v. Judkins, 205 Ala. 601, 88 So. 865; Craig v. Cosgrove, 277 Pa. 580, 121 A. 406; 13 C. J. p. 670, § 764. A breach of a contract may be waived. Thomas-Bonner Co. v. Hooven, Owens & Rentschler Co. (C. C. A. 6) 284 F. 386; Roswell Drainage District v. Dickey (C. C. A. 8) 292 F. 29; Miami Cycle & Sign Mfg. Co. v. Robinson (C. C. A. 6) 245 F. 556, 158 C. C. A. 22; Miami Cycle & Mfg. Co. v. Allen, 257 F. 556, 168 C. C. A. 540; Farrelly v. U. S. (C. C. A. 2) 159 F. 671, 86 C. C. A. 539; Miller v. Mantik, 116 Md. 279, 81 A. 797; Olson v. Harvey, 68 Colo. 180, 188 P. 751, 754. Such a waiver is in the nature of an estoppel. Knarston v. Manhattan Life Ins. Co., 140 Cal. 57, 73 P. 740, 741, 743; Viele v. Germania Ins. Co., 26 Iowa, 9, 96 Am. Dec. 83; Globe Mutual Life Ins. Co. v. Wolff, 95 U. S. 326, 333, 24 L. Ed. 387; Malmquist v. Peterson, supra.

In Viele v. Germania Ins. Co., supra, the court said:

"The waiver or dispensation is not in the nature of a contract which requires the support of a consideration, but rather of an estoppel, whereby the underwriter is precluded from denying the validity of the contract, on account of acts or admissions either recognizing it as of binding force after the forfeiture, or holding out to the assured that the performance of the condition is dispensed with."

[8-10] In the instant case there had been no breach of the contract, and no provision

of the contract was left unperformed. On the contrary, it had been fully performed by both parties and had come to an end, and there was nothing for either party to waive. Waiver cannot bring back to life a contract theretofore fully performed and at an end. If it can be said that the negotiations subsequent to September 16, 1922, between Sigmund Stern and the representatives of the Empire Company, resulted in a contract, it was a new contract for the sale of an interest in land; there was no memorandum thereof in writing sufficient to meet the requirements of the statute of frauds; and for that reason it was nonenforceable. Smith v. Taylor, 82 Cal. 533, 23 P. 217; McConathy v. Lanham, 116 Ky. 735, 76 S. W. 535; Banister v. Fallis, 85 Kan. 320, 116 P. 822.

In the case of Smith v. Taylor, supra, the court held that, where a written contract for the sale of land had ceased and determined by its own terms and the acts of the parties under it, a subsequent oral agreement, that the sale should be concluded on the vendor quieting title against adverse claimants, was void under the statute of frauds. The court said that such subsequent agreement must stand or fall by itself, and not being in writing, and being for the sale of an interest in lands, was nonenforceable.

In the case of McConathy v. Lanham, supra, the court held that, where a written agreement for the sale of mineral land had terminated by its terms, a subsequent oral agreement entered into between the parties undertaking to extend the formal written contract was within the statute of frauds and nonenforceable.

In Banister v. Fallis, supra, the Supreme Court of Kansas held that the modification of a written contract for the sale of land which was in itself an agreement for the sale and conveyance of an interest in land, if not in writing, was nonenforceable.

If the contract in the instant case had provided that Stern should furnish a merchantable title within the five-day period and had not provided for the termination of the contract without obligation on either party if the title was not merchantable, it may be that the Empire Company would then have been in a position to elect to treat the contract at an end, or to elect to waive the time for performance. Under such a state of facts, if the Empire Company had waived the time for performance and Stern had acted upon such waiver, the Empire Company would have been bound. But such is not this case. Here the contract had terminated; no obligation rested upon either party; there

was nothing to waive. Obligation could only be created by virtue of a new contract. If a new contract was made—and it is doubtful that the facts justify such conclusion—it was clearly within the statute of frauds and nonenforceable.

The cause is therefore reversed, with instructions to grant the Empire Company a new trial.