Booti-i, Judge,
delivered the opinion of the court:
This' case is now before the court for final disposition. On March 31, 1924, we dismissed the petition. Subsequently a motion for a new trial was filed, new trial was allowed, and the case reargued. A considerable portion of the delay in the final consideration of the case is justly attributable to the undue prolixity of plaintiff’s brief and argument on the last trial. To challenge findings indisputably accurate and indulge in endless citations of a cumulative character involves tedious,prolongation and delay.
The plaintiff, a corporation organized under the laws of Illinois, entered into a written contract on September 10, 1920, to supply the defendant with 150,000 tons of coal. *311 The price therefor was fixed at $6.75 per ton f. o. b. cars at certain designated coal mines in southern Illinois. The contract was an emergency one. The Quartermaster General of the Army had experienced difficulty in obtaining coal at a fair price, and really persuaded the plaintiff' to make the agreement. Without going into the minute details of the transaction, carefully set forth in the findings, we deem it sufficient to say that on March 7, 1921, the defendant undertook to cancel the contract. On this date a letter signed by “ G. A. Kadcliffe, Captain, Q. M. C.,” was addressed to the plaintiff, notifying it to this effect. The plaintiff up to and including this date had delivered to the defendant in accord with the terms of the contract 53,146 tons of coal, leaving an undelivered balance of 96,854 tons. The suit is to recover the difference between the contract price of this 96,854 tons of coal, neither ordered nor delivered under the contract, and the market value of the same on the date and at the place of delivery fixed in the contract, a sum totaling $445,528.40.
The right of recovery is obviously predicated upon this cancellation clause of the contract. If the defendant possessed in virtue of the terms of the cancellation clause of the contract the legal right to terminate it for the reason therein stated, and followed the method herein prescribed, the plaintiff would be without legal cause of complaint. The cancellation clause is in many respects wholly inapplicable to the subject matter of the contract and the terms and conditions therein stipulated. It is, however, a part of the agreement signed by the parties and sufficiently precise to give to the defendant the right of cancellation as therein provided. Section 2 of the general provisions of the contract is set out in detail in Finding V.
The vital issue with respect to this clause is the contention of the plaintiff, first, that it was not observed as to prescribed method; second, that the notice was too late, the contract period for the delivery of the coal having expired, and that defendant, not plaintiff, was in default; and, finally, that the real reason was the obtaining of coal from another contractor at a less price per ton, delivered at certain of'the *312 places plaintiff was-obligated to supply, and not the public interest which actuated the proceedings.
The right of cancellation, or to the same effect, termination, was not an arbitrary one. The stipulation respecting it required the independent opinion of the Quartermaster General as to the public interest, and 15 days’ notice of intent to exercise the right. These two important factors, deemed essentially important to the contractor as well as the defendant, were not senseless provisions, capable of being ignored when the forfeiture of important property rights under a contract was involved. It was necessary for the defendant to observe strictly the provisions of the clause. It was inserted in the contract by the defendant, worked in the end to confer an important privilege on the defendant, was easy of precise observance, and failure to comply therewith has been held fatal to the right.
In Williams v. United States, 26 C. Cls. 132-141, this court 'followed the fundamental rule that “ the agreement having provided a specific mode in which the contract was to be annulled, that mode must be strictly pursued in order to charge'the claimant with the consequences of delinquency.” In the case of Stone, Sand & Gravel Co. v. United States, 234 U. S. 270, the Supreme Court said: “ The benefit and burden' of a provision in a Government contract giving a right to annul in consequence of a breach by failure to commence work must hang together and the Government can not avail of the former without accepting the latter.” In Hawkins v. United States, 96 U. S. 689, the contract provided that no departure should be made from its conditions without the Avritten consent of the Secretary of the Treasury. The contractor in this case complied with the terms of the contract, but an officer, other than the Secretary, required of him material different from that specified, to which change the contractor assented. The Supreme Court declined to grant additional compensation, holding that the contractor was obligated to take notice that no one other than the Secretary might vary the terms of the contract. Another' case, similar in principle, decided by this court, held: “ Where a contract is in terms subject to the approval of two designated superior officers, none below them have a *313 right to change the terms of the agreement.” Mitchell v. United States, 19 C. Cls. 39. In King v. United States, 37 C. Cls. 428, 436, Chief Justice Nott, in delivering the opinion of the court, said: “As forfeitures are not favored in law, and as parties who seek to assert a forfeiture are generally held to the very letter of their authority, it may be doubted whether in an action between two persons this notice would be upheld by a court. The contract called for ‘the judgment of the engineer in charge,’ and gave him alone ‘ power, with the sanction of the Chief of Engineers, to annul the contract by giving notice in writing to the party of the second part.’ The Chief of Engineers and the Secretary of War and the assistant who signed the notice were not the persons named in the contract. The contractor was entitled to the judgment of the engineer in charge, with the sanction of the Chief of Engineers, and was entitled to ‘notice in writing to that effect from the engineer in charge.’ ”
It is true that the above case was determined upon a proven breach of the contract by the United States, and the quoted observations were not vital to the judgment awarded; nevertheless, it is a cogent résumé of the law respecting the subject and worthy of citation. The case of Spencer v. Duplan Silk Co., 112 Fed. 638, approves the principle, and a long and uniform line of state cases are in strict harmony on the subject. Page on Contracts, Vol. 3, sec. 1464, p. 2260, contains a comment on the delegation of authority reposed by the terms of a contract in a named individual, and therein it is stated that without the assent of the contractor it may not be done. The Supreme Court has on more than one occasion affirmed the doctrine that where a Government contract in terms provides that it shall not become effective until approved by an officer named therein, such approval by said officer must affirmatively appear before it becomes a binding obligation. Filor v. United States, 9 Wall. 45; United States v. Lynah, 188 U. S. 445; United States v. Winchester, etc., R. R., 163 U. S. 253.
The cancellation clause involved herein expressly gave to the plaintiff the right to have the opinion of the Quartermaster General, and conferred upon this officer a discretion, *314 after a review of the situation, to either cancel or withhold cancellation of the contract. The contracting officer was to give 15 days’ notice, a mere ministerial act, thus emphasizing the mutual understanding of the parties that one designated official was to act in a judicial capacity and the other carry forward his determination. We need not multiply citations to the effect that where one is vested with discretion to do or not to do a certain thing, he alone must act. The record in this case discloses the importance of .this contractual right to the plaintiff. Not only was the plaintiff not in default in the performance of the contract — in fact more had been done than the agreement called for — but there is abundant room for holding that the reasons given were not in strict accord with the facts. Coal was being delivered to stations under another contract which this contractor was to supply. There is no evidence of a lack of appropriation and nothing whatever to show that the step taken was such as the public interest required. As a matter of fact, it is fairly inferable that the motive for cancellation was the ability to obtain coal to meet the demands of the defendant at a less price per ton, and the desire of Major Stayton to utilize the available appropriation for other purposes. The defendant asserts the procedure followed in the cancellation is similar to the one usually employed under like circumstances by the Government. The argument is not impressive. The plaintiff did not assent to the proceedings, or in any manner waive its rights under the contract, as provided in section 22 thereof.
On the previous hearing of the case we were of the opinion that the plaintiff had failed to sustain proof of loss and so believing, dismissed the petition. This opinion was predicated upon the contracts between the plaintiff and the mining companies who were to furnish the coal. In this respect we believe we were in error. The contract sued upon is the contract between the parties to this suit, and rights are to be determined according to its terms. The transaction was in effect a sale, and the rule of damages is well settled. The contract was between the plaintiff and defendant. The contract fixed the rights of the parties, and *315 to its terms and provisions we alone must resort. The plaintiff entered into a bond for its faithful performance, and would have been liable thereon in case of default. What contracts the plaintiff had with third parties, and rights and liabilities growing out of the same, to which the defendant was not a party and in no way concerned, are not available to curtail or defeat liability under a contract legally existing between the parties to this litigation.
, The defendant agreed to purchase the coal and pay a stipulated price therefor. If the coal was not needed, or the public interests required a cancellation of the contract, a method was expressly pointed out in the contract itself by which the desired result could have been brought about without resulting in loss or injury. This method was not followed. The defendant is charged with the observance of contractual stipulations to the same extent as the plaintiff.
There are many questions raised in the briefs of counsel. If we are correct, they are all subordinate to the right of cancellation of the contract. The contract, in our opinion, was not cancelled according to its terms, and what was done in no way relieves the defendant from its breach.
Judgment will be awarded the plaintiff under Finding XYII for $445,528.40. We may not, under the law, allow interest.
It is so ordered.
Hay, Judge; Downey, Judge; and Campbell, Chief Justice, concur.