Graham, Judge,
delivered the opinion of the court:
The parties in this case contracted in writing for the purchase of certain quantities of oats and 451 tons of bran, to be delivered during the months of June and July, 1920, at *337 the prices and place fixed in the contract. The plaintiff delivered all of the oats, for which it was paid. It delivered on a shipping order, and the defendant accepted and paid for 176 tons of bran. After plaintiff had made arrangements for shipping the said 176 tons of bran, but before it delivered same, it received a communication from the contracting officer requesting it to consent to the termination of the contract. Plaintiff did not consent to said termination. Thereafter the supply officer at Camp Funston wrote to plaintiff stating that it would be impossible to handle the undelivered portion of the bran before the first of the year 1921, as every available building for storage was filled. On the 23d of July plaintiff notified the contracting officer that it was ready to deliver the balance of the bran whenever called upon, and on August 25 notified the supply officer to the same effect. On the 6th of January, 1921, plaintiff wrote to the contracting officer stating that it was ready to make delivei'y of the balance of the bran. The defendant, through its representative, replied to this letter and refused to accept delivery, claiming that the contract had been terminated. The findings do not show that the contract was canceled.
The contract (Article IX) contained the following provision :
“ Sec. 2. Termination in public interest: If in the opinion of the Quartermaster General the public interest shall so require, this contract may be terminated by the United States by fifteen days’ notice in writing from the contracting officer to the contractor, and such termination shall be deemed to be effective upon the expiration of fifteen days after the giving of such notice, and shall be without prejudice to any claims which the United States may have against the contractor under this contract. After the receipt of such notice the contractor shall not order any further materials, or facilities, or enter into any further subcontracts or make any further purchases in connection with the performance of this contract without written consent previously obtained from the contracting officer; but inspection of the completed article or work and acceptance thereof by the United States in accordance with the terms of this contract shall continue during such period of fifteen days as though such notice had not been given.”
*338 It does not appear that any steps were taken by defendant to comply with the requirements of this provision; that is, it does not appear that 15 days’ notice in writing was given by the Quartermaster General or, for that matter, by anyone declaring the contract canceled. (Burton Coal Co. v. United States, 60 C. Cls. 294, decided February 2, 1925.) The findings disclose a request made of plaintiff to consent to a cancellation and that plaintiff did not consent. There having been no cancellation of the contract, it remained in force, and the refusal of defendant to accept delivery of the balance of the bran called for by the contract was a breach of it, for which plaintiff is entitled to recover such damages as the circumstances justify.
The plaintiff had a contract for the delivery of 451 tons of bran. One hundred and twenty tons were to be delivered at the price of $2.72 per hundredweight, 120 tons at $2.77 per hundredweight, 120 tons at $2.88 per hundredweight, and 91 tons at $2.87 per hundredweight. One hundred and seventy-six (176) tons were delivered, for which plaintiff was paid, leaving undelivered 275 tons. The time of delivery under the contract was June and July, 1920, on receipt of shipping instructions from defendant. The postponement, by mutual agreement, of the time of delivery did not affect the contract. It remained as it was as far as the date for fixing the market value is concerned; that is to say, the date for this purpose remained the time of delivery fixed by the contract. The extension of it was unconditional and without reservation by the plaintiff. It is to be assumed that the plaintiff knew that in purchasing the quantities of bran needed to carry out the contract ic might be called upon to pay more or less in January than in July preceding. Plaintiff was a jobber, and while it had some bran on hand in January (how much does not appear) , it did not have a sufficient amount to complete delivery under the contract. But bran was plentiful and it could have procured it in the market. Had the price of bran gone up, it is fair to assume that plaintiff would not be here contending that January was the time for estimating the market value.
*339 As stated, plaintiff had some bran on hand. It does not appear that it sold this bran. So that this is not a case of a refusal to accept, and notice of an intention to sell, and a sale of the material on hand at a loss as compared with the contract price.
It must be held, therefore, that the measure of damages is the usual measure of damages in case of a breach such as we have here, viz, the difference between the contract price and the fair market price of the commodity at the time and place of delivery fixed by the contract. This has been found by the court to be $2,281.36. Aside from this, the extension of the time of delivery in accordance with the request of the supply officer at Camp Funston, who had no authority to alter the contract by granting or agreeing to the extension, would not change the time of delivery fixed in the contract.
Plaintiff should have judgment for the amount stated, and it is so ordered.
Hay, Judge; Downey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.