Booth, Chief Justice,
dissenting:
I dissent from the opinion of the court in so far as no allowance is made for profit on the unworked material. Findings XX, XXI, XXII, XXIII, and XXIV warrant a judgment in this respect for at least $220,882.05.
ON MOTION FOR NEW TRIAL
Green, Judge,
delivered the opinion of the court:
The motion for new trial sets up so many grounds that it is impossible to review any but those upon which plaintiff’s counsel lay particular stress, without going beyond any reasonable limits. The motion is based upon alleged errors of fact as shown by the findings made by the court and errors of law which, it is contended, appear in the opinion and conclusions reached therein. The case was given much care and attention before the original decision was made. The findings of fact made by the commissioner, prior to its consideration by the court, show very clearly that the commissioner must have given much time and attention thereto. These findings were carefully reviewed by the court and have been again considered in the light of the argument and reargument made by counsel. The findings made by the court in some important respects were more favorable to plaintiff than the findings of the commissioner. Upon consideration and reconsideration, we think now that if any doubt exists in relation to them it is as to whether the findings of the commissioner in this respect should not have been followed. Our further consideration of the conclusions of law, instead of leading to any change of view, has furnished additional reasons for sustaining the judgment entered.
Finding XIII of the court states:
“ On December 24, 1918, the Chief of Ordnance designated the claims board as the compensation board provided *141 for under the terms of ‘ certain small arms munition contracts.’ ”
Plaintiff objects to this finding and says that there is no evidence whatever supporting it. We are at a loss to understand why such a statement is made.
The Chief of Ordnance did sign the order, and the only difference in the finding from the language of the order is' that the word “ appointed ” is used instead of “ designated,” and in the original order the words “ compensation board ” are included in quotation marks. The meaning is not changed in the least.
The only basis that can be found for the statement that the evidence does not support the finding is the argument that the “compensation board” was not appointed in the manner provided by the contract. It may well be contended on behalf of the defendant, and is now argued, that the board was in fact appointed in accordance with the contract. General Crozier, as Chief of Ordnance, signed the original contract on behalf of the defendant. His successor as Chief of Ordnance signed the order appointing the compensation board. The construction given by plaintiff to the contract would require that a new compensation board should be appointed every time a contract of this nature was executed by a different Chief of Ordnance. We doubt very much whether that was intended by the contract. Upon reargument we are inclined to think that the statements made in the original opinion with reference to this matter were altogether too favorable to plaintiff in implying that the appointment of the board was not in accordance with the terms of the contract. A ruling on this point involved a very doubtful question, to say the least, and it was not necessary that the opinion should determine it. But it will be- observed that Finding XIII does not state that the compensation board was or was not appointed in the manner required by the contract. It merely states that a compensation board was appointed. Nor does the opinion base any of its conclusions on an assumption that it was so appointed in accordance with the contract; but, on the contrary, the opinion bases its conclusions upon the controlling *142 fact that at no time through hearings and rehearings did plaintiff make any objection to the manner in which the board was appointed, or to any other of the proceedings on the hearing of its claim, but, on the contrary, by every reasonable inference, acquiesced therein.
It is true that counsel for plaintiff contend that plaintiff never submitted its claim to this board and that it objected to its consideration thereof, but the contrary is manifest from the evidence. In its letter of August 30, 1920, the plaintiff did call attention to Article XV of the contract and stated that it provided “that questions as to what enters into costs shall come before a board which has been known as the compensation board,” but it concluded its letter by stating that it understood that the “ claims board is now authorized to act as the compensation board, and accordingly the matter is being taken up through your board.”
When plaintiff made this last statement, it virtually accepted the action of the Government in designating the claims board to act as a compensation board, and was “ accordingly ” taking up its claim with this board. The further proceedings of plaintiff in submitting its claim, and all of the evidence taken together, make it clear, as we think, that plaintiff was not making any objection to the manner in which the compensation board was appointed, or the submission of its claim to the board, but was acquiescing therein. But as counsel for plaintiff complain so strenuously of the omission of certain statements contained in the letter of August 30, 1920, Finding XVI will be amended so as to include the qiart upon which they especially rely which was considered along with the other evidence in determining the ultimate facts.
There are other requests for testimony or items of evidence to be inserted in the findings of fact, but we think they have no proper place therein.
In this connection, it is said that when on September 27, 1920, the plaintiff presented its claim by a letter with an accompanying statement, the statement was addressed to the War Department, Purchase, Storage, and Traffic Division, General Staff, office of the Director of Finance, but *143 this appears to be merely a printed heading on blanks prepared by that office. All of the circumstances of the case, including those which subsequently transpired, show very definitely that the plaintiff had no intention of submitting the claim to this division and that neither party thought it was so submitted, but on the contrary that it was being submitted to the Bridgeport district claims board, which plaintiff knew had been appointed as the compensation hoard. The letter enclosing the statement was addressed to the Bridgeport district claims board and began, “ Enclosed we hand you our claim * * In the body of the claim was a statement reading, “ These claims are submitted to the compensation board in accordance with the provisions of the contract.” As plaintiff knew that the claims board had been appointed the compensation board and had previously so advised defendant, it is clear that defendant’s officials would understand from that fact and the letter which accompanied the claim that it was submitted to the compensation board so appointed, because the contract required that claims under it should be submitted to a compensation board. There was nothing in any of the communications from which the officials of defendant would understand that objection was being taken to the appointment of the Bridgeport board as a compensation board, and Finding XYII will be amended accordingly. If the plaintiff’s officials had intended that those acting for defendant should understand that objection was being made by these communications to which we have referred, either to the manner in which the board was appointed or to the proceedings, they would have stated so in direct language; and if they in fact intended, as is now argued, by these statements to lay the foundation for a repudiation of the action of the various boards to which they submitted their case in event the decision was unfavorable, it must be said that plaintiff’s officials were proceeding in a manner calculated to mislead the representatives of defendant to its prejudice, and under well-settled rules of equity plaintiff can not be permitted to take advantage thereof.
*144 Finding XX states that “ the plaintiff checked out of the storehouse materials as needed for work on the contracts.” This statement is indefinite. Plaintiff receipted for the materials out of the storehouse Avhen it obtained them for use in performing the contract, and the finding will be changed accordingly, but there is nothing in the opinion that is based on either statement.
Plaintiff complains that the opinion recites—
“ About a year after the whole matter had apparently been settled, it [plaintiff] made the claim now asserted in the petition; * *
This statement is not literally correct. While plaintiff got most of its pay as the work progressed, a certain percentage was withheld when the progress payments were made, and final payment was made at a much later date than the statement in the former opinion would indicate. But when what transpired is set out more in detail, it will be observed that it is much more unfavorable to plaintiff’s contention than the statement of which complaint is made. Findings VIII, X, and XI show that monthly vouchers were prepared for the item of depreciation, and that the amount thereof was mutually agreed upon. Although this amount was computed on the basis of ordinary depreciation and not on the difference in market value to which plaintiff now claims it is entitled, the evidence fails to show any objection, protest, or claim that the method used was not correct, or intimation that plaintiff was entitled to anything more or different. On the contrary, the accounting departments of the plaintiff and defendant agreed on a method of computing depreciation, and this method was followed from the beginning to the end of their contract to final settlement. Vouchers were made up accordingly and certified to be correct by the representatives of both parties. In this way the method of computing the allowance for depreciation between the parties was settled.
It should be noted in this connection that plaintiff could not have both ordinary depreciation and depreciation in value. Whether the contract provided for ordinary depreciation or for depreciation in value, plaintiff was not entitled *145 to both, and if it got one it was not entitled to the other. The vouchers therefore were not correct if the claim which plaintiff now makes is sustained, and these transactions were utterly inconsistent with the claim that plaintiff now makes.
'The case of St. Louis & O'Fallon R. Co. et al. v. United States, 279 U. S. 461, is cited as showing that evidence of cost may be considered along with other circumstances in determining value. This would have been conceded without the citation, and there is nothing in the former opinion on the case at bar to the contrary. The opinion merely makes some observations on the weight to be given evidence of cost when offered as proof of value.
Burton Coal Co. v. United States, 60 C. Cls. 294, is cited as contrary to the views of the court with reference to- the duty of plaintiff if it considered that the provisions of the contract were not being followed with reference to the compensation board to make a request for the kind of proceedings to which it now claims it was entitled. All that this case holds is that where, in a contract with the United States, the Government is given the right to terminate the contract in a certain manner and upon certain conditions, these provisions must be complied with if the Government desires to avail itself thereof. In that case the burden was upon the defendant to show compliance with the terms of the contract. In the instant case the burden is upon the plaintiff.
It is argued that Bray v. United States, 46 C. Cls. 132, and Fitzgibbon v. United States, 52 C. Cls. 164, cited in the former opinion, are not applicable to the case at bar. It may be conceded that the facts are not exactly the same in either of the cases as in the instant case, but the principle laid down in the two cases is, in our opinion, directly applicable. We do not think that plaintiff could play fast and loose with the Government and, without protest or objection to the proceedings, go on with hearing after hearing, take appeal after appeal, and then say that the only reason it so proceeded was in hope that its claim might be allowed, and that if it was not allowed it intended to assert the proceedings were of no validity whatever. Mr. Justice Holmes said, *146 in Rock Island, A. & L. R. R. v. United States, 254 U. S. 141, that:
“ Men must turn square corners when they deal with the Government.”
Certainly the plaintiff was not turning “ square corners ” when proceeding in this manner. In our opinion, common ordinary fairness as well as legal principles required plaintiff to make it known to the other party that it would not be bound by any decision unfavorable to it which might be made by the various boards and officials to which it voluntarily submitted its claim, if such was its intention.
The motion for new trial must be overruled.
Williams, Judge, and Littleton, Judge, concur.
Booth, Chief Justice, concurs in so far as the matter of depreciation is concerned; otherwise adheres to his views as expressed in the former opinion of the court.
Whalet, Judge, took no part in this decision.